259 A.2d 119.

STATE *vs.* ERNEST LOUIS ROACH.
STATE *vs.* ERNEST LOUIS ROACH.

NOVEMBER 19, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. These are two criminal complaints which charge the defendant with the unlawful possession of lottery tickets—a violation of G. L. 1956, §11-19-5. The cases were consolidated in the Superior Court where a justice of that court found the defendant guilty as charged in both

cases. The defendant is before us on his bill of exceptions. We, too, have consolidated both cases.

A pretrial hearing was held on defendant's motion to suppress the evidence on the grounds that the police did not have probable cause to arrest him. The motion was denied, and an exception taken. This is the only exception being pressed by defendant. We shall consider whether defendant's arrest was in violation of §12-7-3 and the Fourth and Fourteenth Amendments to the Constitution of the United States. The pertinent portion of §12-7-3 provides that a peace officer may arrest a person for a misdemeanor without a warrant whenever "the officer has reasonable ground to believe that a misdemeanor has been or is being committed in his presence and that the person to be arrested has committed or is committing it." The term "probable cause" as it is used in the Fourth Amendment and the term "reasonable ground" as it is found in our statute are practically synonymous. *State* v. *McWeeney*, 100 R. I. 394, 216 A.2d 357. Hereafter we shall use the phrase "probable cause."

The sole witness at the hearing on the motion to suppress was Detective Anthony J. Mancuso, a member of the Rhode Island State Police. He testified that at approximately 2 p.m. on Thursday, September 14, 1967, he received a telephone call from an informant whose past accurate information had established his reliability. The informer told the officer that defendant was selling football pool tickets which were based on the results of forthcoming collegiate and professional games. The officer was told that his caller had purchased some tickets from Roach earlier that week. Roach, the informer reported, kept the tickets in a brown paper bag which was kept in defendant's pocket. The officer further stated that his informant said that he had seen defendant that day with the tickets in the paper bag. The defendant at that time was in the company of a known

bookie. The informer then said that he "thought" Roach and the bookie were going to the backstretch section of Lincoln Downs Race Track because this was where defendant's companion, the bookie, was conducting his business. The detective was also told that the two men would be in a certain specified automobile. Lincoln Downs is an oval track. To those who are not followers of the so-called sport of kings, the backstretch is the straightaway portion of the track that lies the furthest distance from the spectators. As will be seen, defendant and the bookie were not found on the track proper but were on a portion of the track property which runs along the so-called backstretch of the track's racing surface.

The officer then told the trial judge that he arrived in the backstretch area of Lincoln Downs at approximately 3 p.m. and began his surveillance of defendant. The defendant was seated in the back seat of the car described earlier by the informant. The bookie sat in the front seat on the driver's side and a third unknown man occupied the passenger's side of the front seat. Two men approached the car and talked to the bookie and the other individual in the front seat. At about 5 p.m., all five men went up to a fence which ran alongside the racing surface. There they all watched the running of the third race. Shortly thereafter, the trooper saw the bookie exchange money with one of the men who had earlier approached the car. Subsequent to this transaction, the men ran back to the car and left Lincoln Downs at what the trooper said was "a high rate of speed for the place they were in * * *."

The officer and his partner pursued the vehicle and stopped it on the Old Louisquisset Pike. The defendant was arrested. Following his arrest, defendant was ordered to empty out his pockets and to put everything he had on the hood of the police car. The last item placed on the hood was the brown paper bag inside of which were found

the lottery slips. It is conceded that at no time during the period of surveillance did the trooper observe defendant perform any overt illegal act.

In denying defendant's motion to suppress, the trial justice cited the case of *Draper* v. *United States*, 358 U. S. 307, 79 S. Ct. 329, 3 L.Ed.2d 327, and remarked that the arresting officers in *Draper* had no more specific information as to Draper and his activities than did Detective Mancuso in the cases at bar. We disagree.

As we seek to resolve the issue of probable cause, it is appropriate to set forth certain basic principles. This year in *Spinelli* v. *United States*, 393 U. S. 410, 89 S. Ct. 584, 21 L.Ed.2d 637, it was pointed out that while the *Draper* case "involved the question whether the police had probable cause for an arrest without a warrant, the analysis required for an answer to this question is basically similar to that demanded of a magistrate when he considers whether a search warrant should issue." A magistrate may find probable cause either on evidence less than is required to convict or even on evidence which may be incompetent in a criminal trial. *State* v. *LeBlanc*, 100 R. I. 523, 217 A.2d 471. Probable cause may be present in cases where any information upon which an arrest is made comes from an unidentified informer, provided there is a showing of the "underlying circumstances" of both the informer's conclusion of guilt and the officer's conclusion that his informant is reliable. *Aguilar* v. *Texas*, 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723. The principles enunciated herein are to be tested in a common sense and realistic fashion. *United States* v. *Ventresca*, 380 U. S. 102, 85 S. Ct. 741, 13 L.Ed.2d 684. While it is well established that "only the probability and not a prima facie showing of criminal activity is the standard of probable cause" *Spinelli* v. *United States, supra,* it is also clear that the record must contain evidence which would arouse something more than a mere suspicion

of the guilt of the accused. *State* v. *Almeida,* 105 R. I. 687, 255 A.2d 151. Finally, it needs no citation to point out a basic proposition that the legality of the arrest is to be determined by the existence of probable cause *at the time of the arrest,* not what the subsequent search may disclose.

In *Spinelli,* the court said that the detail provided by the informer in *Draper* to the F.B.I. provided a suitable benchmark in determining the existence of probable cause. In *Draper,* although the informer did not state how he obtained his information, he stated that the accused had gone to Chicago "the day before by train and that he would return to Denver by train with three ounces of heroin on one of two specified mornings." Here, however, the information furnished Detective Mancuso does not measure up to the standards set forth in *Draper.*

The state in its brief says that the informer told the trooper that Roach would be at the backstretch of the racetrack because this was where Roach sold his tickets. However, an examination of the transcript shows that the state is in error when it makes this representation. The informant said that he thought that Roach and the bookie would show up near the backstretch because this was the spot where the bookie, *not Roach,* carried on his business. This oversight by the state highlights the information gap which differentiates the instant appeal from *Draper.* Nowhere did Detective Mancuso's informer state that Roach in the afternoon of September 14, 1967, would commit a crime in a public place, to wit, that he would be carrying the lottery tickets at the time in question. The mere fact at some undetermined time on September 14, 1967, Roach was seen in possession of lottery tickets does not justify a reasonable inference that at 5 p.m. on that day he had the tickets on his person. The failure of the informant to supply the missing details is fatal to the state's case. While the informant furnished the state trooper information

which might have given rise to a mere suspicion in the officer's mind that a misdemeanor was being committed in his presence, the lack of the requisite information effectively negated the existence of probable cause at the time he arrested defendant.

In each case, the defendant's exception to the denial of his motion to suppress is sustained and the cases are remitted to the Superior Court for a new trial.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, for plaintiff.

*Paul E. Kelley,* Assistant Public Defender, for defendant.