292 A.2d 219.

STATE *vs.* PHILLIP K. CANNON.

JUNE 20, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J.  Phillip K. Cannon was indicted on October 29, 1970 for unlawfully possessing "* * * a certain narcotic drug, to wit, Cannabis, in violation of Title 21, Chapter 28, Sections 31 and 3 of the General Laws of Rhode Island, 1956, as amended."  The defendant's pretrial motion to suppress certain evidence seized in the execution of a search warrant was granted by a Superior Court justice on the ground that the affidavit supporting the application for the search warrant failed to comply with the fourth amendment's command that "no warrants shall issue, but upon probable cause."  Under a procedure recently authorized by G. L. 1956 (1969 Reenactment) §9-24-32 the state now presses its exception to that ruling.

On February 7, 1970, Captain Joseph P. Barry and Sergeant Donald E. Allcock, both Pawtucket police officers,

248

acting under authority of a search warrant issued by a District Court judge entered an apartment where defendant resided with his mother and other members of his family. They searched the premises and seized "13 Plastic bags of a tobacco like substance, believed to be marihuana, 3 assorted pipes, believed used to smoke marihuana," and "1 package of cigarette papers."

The warrant authorizing the search was issued solely upon Sergeant Allcock's affidavit wherein he stated, on oath, that he had reason to believe and did believe that "a quantity of marihuana and paraphernalia used for the partaking of narcotics" were unlawfully cached by defendant in his apartment. According to the affidavit, the sergeant's belief flowed from information received from "a reliable, confidential informant whose information in the past ha[d] resulted" in several arrests.[1]

Continuing, the affidavit then sets forth that the informant told the affiant on February 7, 1970 that he was friendly with defendant; that defendant was a user of marihuana; that on February 6, 1970 defendant told the informant that he and a friend were "going to Boston to pick up some grass that night"; that when the informant expressed a wish to purchase some marihuana defendant suggested that they meet at his residence the next morning; that he accepted that invitation and on the following day went to defendant's apartment at about 11 a.m.; that defendant went into what appeared to be his mother's bed-

---

[1]That affidavit, with respect to the informant's "credibility" and the information's "reliability," states that the information came to the affiant from "a reliable, confidential informant whose information in the past has resulted in the arrest of Christopher Ryan and Philip Carufel in a raid in Central Falls, Rhode Island on December 14, 1968. This same informant's information resulted in the arrest of one Jesse Viera, Jr. in Pawtucket on November 23, 1968 on charges of selling marihuana. Informant's information also resulted in the arrest of Steven Jaron and Alan Hoppin for possession of marihuana and needles and syringes on February 26, 1969."

room, reached behind a bureau, and "brought out a brown paper bag with a red elastic around it"; that defendant opened the bag and took from it some "* * * plastic envelopes filled with a brownish substance and asked the informant how much he wanted to buy"; that he purchased one of those envelopes for $20; that defendant "* * * then closed the paper bag, which appeared * * * to contain a large number of plastic bags filled with the same substance"; that he then left defendant's apartment and soon thereafter met with the affiant; that he gave the affiant "a plastic bag containing what appeared * * * to be marihuana"; and that the affiant then "performed a Narcodal test on the substance in the bag" and that the "test produced a violet color, indicating the presence of marihuana."

The affidavit apparently furnished the only basis for the issuance of the search warrant, and whether it contained a constitutionally sufficient showing of probable cause[2] must be determined under the guidelines established in *Aguilar* v. *Texas,* 378 U. S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), as explicated in *Spinelli* v. *United States,* 393 U. S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

In the first of those cases the Court said that a magistrate should not issue a search warrant premised solely on the hearsay report of an unidentified informant unless he is presented with "some of the underlying circumstances" (1) which enabled that informant to conclude that the ob-

---

[2]"Probable cause under the Fourth Amendment exists where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." *Berger* v. *New York,* 388 U. S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040, 1050 (1967); *Accord, Brinegar* v. *United States,* 338 U. S. 160, 175-76, 69 S.Ct. 1302, 1310-11, 93 L.Ed. 1879, 1890 (1949); *Carroll* v. *United States,* 267 U. S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925); *State* v. *McWeeney,* 100 R. I. 394, 216 A.2d 357 (1966); *Cioci* v. *Santos,* 99 R. I. 308, 207 A.2d 300 (1965).

jects to be searched for may be found at the place where he claims they are located, and (2) upon which the affiant concluded that the informant was "credible," or his information "reliable."

In *Spinelli* the Court delineated how *Aguilar's* two-pronged test should be applied. First, it said the magistrate should apply the *Aguilar* standards as the bench mark against which to measure the informer's report. If it fails to measure up, the magistrate should refuse to issue the warrant unless he is prepared to say on the basis of other information[3] supplied under oath that it can "* * * fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration." *Spinelli* v. *United States, supra,* at 415, 89 S.Ct. at 588, 21 L.Ed.2d at 643 (1969).

We test the affidavit in this case by these principles and do so heedful of the Supreme Court's admonitions and teachings that affidavits are "normally drafted by nonlawyers in the midst and haste of a criminal investigation"; that they "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion"; that "[t]echnical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area"; and that "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." *United States* v. *Ventresca,* 380 U. S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965).

The affidavit in this case, viewed as required under *Ventresca,* indicates that the informant based his tip upon his

---

[3] In *Spinelli* v. *United States,* 393 U. S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the report of an independent FBI investigator corroborated the informer's tip.

own observations and that he described to the affiant "underlying circumstances" which clearly justified the conclusion that marihuana would be found at defendant's apartment. Unlike the probable cause in *State* v. *Roach*, 106 R. I. 280, 259 A.2d 119 (1969),[4] and unlike the affidavits in *Spinelli*,[5] *Aguilar*[6] and *State* v. *LeBlanc*, 100 R. I. 523, 217 A.2d 471 (1966),[7] what was presented to the District Court

---

[4]In *State* v. *Roach*, 106 R. I. 280, 259 A.2d 119 (1969), the informant said that he had seen lottery slips in the defendant's possession in the past and that the defendant would show up at a spot where a bookie-acquaintance of the defendant's conducted "his business." He did not, however, advise that at the time and place in question Roach would be carrying lottery tickets. Without questioning the informant's reliability, we held that the limited information conveyed, although it might have made the arresting officer *suspect* that a misdemeanor was being committed in his presence, was insufficient to establish probable cause.

[5]In *Spinelli* v. *United States*, 393 U. S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the affidavit recited an allegedly reliable informant's tip that Spinelli was using two telephones with specified numbers to conduct a gambling business. The Court held that this information, even though corroborated in part by an independent FBI investigation, was insufficient because it failed either to describe the "circumstances" of the accused's alleged criminal activity with sufficient detail to support the tipster's trustworthiness or his assertion that he obtained his information about Spinelli in a reliable way.

[6]In *Aguilar* v. *Texas*, 378 U. S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the affidavit said only that the "[a]ffiants have received reliable information from a credible person and do believe that [certain narcotics] are being kept * * * for the purpose of sale and use contrary to the provisions of the law." *Id.* at 109, 84 S.Ct. at 1511, 12 L.Ed.2d at 725. The vice of that affidavit, the Court said, was its failure to inform of the "underlying circumstances" from which informant concluded that the narcotics were where he claimed they were or to furnish any support for the affiant-officers' claim that their informant was "credible" or his information "reliable." *Id.* at 113-15, 84 S.Ct. at 1513-14, 12 L.Ed.2d at 728-29.

[7]In *State* v. *LeBlanc*, 100 R. I. 523, 217 A.2d 471 (1966), police officers recited in their affidavit that they had reason to believe that gambling was being conducted at the defendant's dwelling house because it had been reported to and investigated by them that he entered a bet on November 4, 1959. The faults in that affidavit, we said, were that it neither stated any of the underlying facts or circumstances upon which

judge in this case portrayed defendant's purported criminal activity with more than enough detail to enable him, as a "neutral and detached magistrate," to conclude that the affiant was "* * * relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation." *Spinelli* v. *United States, supra,* at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 644. In short, the affidavit satisfactorily passed the first of *Aguilar's* two-pronged tests.

Next, we inquire whether the disclosure of the "underlying circumstances" in this case provided the affiant with a substantial basis for believing that the informant, or what he had to say, was trustworthy. To satisfy that guideline the state points to the affiant's statement that the informant had in the past supplied him with information which led to five arrests.[8]

The defendant meets that contention with the argument that *Aguilar* does not permit a predication of "credibility" solely upon prior tips if those tips led only to arrests and not to convictions. In his judgment an arrest is a "mere accusation" which, unless followed by a conviction, is a legally insufficient verification of an informer's trustworthiness. While the state calls upon *United States* v. *Harris,* 403 U. S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971)[9] to rebut that argument, that case is of no assistance. It postdates both the search and the suppression hearing in this

---

the officers based their belief that a violation had occurred, nor anything about the credibility of whoever it was that had reported to them that gambling was taking place at the defendant's dwelling.

[8]See n. 1.

[9]In *United States* v. *Harris,* 403 U. S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the recital in the affidavit identified the nameless informant as a "prudent person" who had "personal knowledge" of the defendant's illegal activities, and the Court held that this assertion was made sufficient when the informant, in the course of implicating defendant in the illegal activity, also disclosed his own involvement therein.

case, and we are told that fourth amendment decisions of the Supreme Court are applied prospectively rather than retrospectively. *Desist* v. *United States,* 394 U. S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); *Fuller* v. *Alaska,* 393 U. S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968) and *Linkletter* v. *Walker,* 381 U. S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

Lack .of support from *Harris,* however, is not necessarily fatal to the state's position for there is ample authority which accepts less than prior information leading to a conviction as a good reason in law for relying upon the credibility of a nameless informant.[10] They arrive at that conclusion because they recognize that "[a] variety of factors having nothing to do with the truth and dependability of the informer's story may prevent a conviction \* \* \*," *United States* v. *Gazard Colon,* 419 F.2d 120, 122 (2d Cir. 1969), and therefore they do not tie dependability to a conviction, but insist only that the affiant's faith in the informant's dependability rests on a firm foundation. This seems to us to be a sound rule, and one which is particularly apt in a case such as this where the informant's personal observations were set out in such complete detail as to have led the magistrate almost ineluctably to the conclusion that the objects of the proposed search would be found at the place where the informant said they were.

---

[10]So holding, is *United States* v. *Shipstead,* 433 F.2d 368 (9th Cir. 1970) where the affiant averred that the informant had supplied law enforcement officers with information over the last five or six months which resulted in three arrests; *United States* v. *Gazard Colon,* 419 F.2d 120 (2d Cir. 1969) where during the preceding five months the informant had given a narcotics agent at least six tips, three of which had led to arrests and the seizure of some heroin; *United States* v. *Rich,* 407 F.2d 934 (5th Cir. 1969) where the affidavit with respect to reliability said only that the agent had received information from a confidential informant who had "'on repeated occasions in the past furnished reliable and credible information.'" *See also United States* v. *Buonomo,* 441 F.2d 922 (7th Cir. 1971); *United States* v. *Kidd,* 407 F.2d 1316 (6th Cir. 1969).

In sum, then, our application of the relevant and controlling principles causes us to conclude that the District Court judge, when he authorized the search, was performing "his detached function" and was not serving "merely as a rubber stamp for the police." *United States* v. *Ventresca, supra,* at 109, 85 S.Ct. at 746, 13 L.Ed.2d at 689.

The state's exception is sustained and the case is remitted to the Superior Court for further proceedings.

*Richard J. Israel,* Attorney General, *Donald P. Ryan,* Asst. Attorney General, for plaintiff.

*William J. Gearon,* for defendant.