324 A.2d 331.

STATE *vs.* DONALD S. CONNELL.

AUGUST 9, 1974.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

ROBERTS, C. J. These are two criminal complaints, in one of which the defendant, Donald S. Connell, was charged with bookmaking and in the other with maintaining a room for the registration of bets in violation of G. L. 1956, §11-19-14. The matters were tried to a jury in the Superior Court, which returned a verdict of guilty in each case. In each case the subsequent motion of the defendant for a new trial was denied, and he is now prosecuting a bill of exceptions in this court.

It appears from the record that on October 3, 1963, members of the state police raided a dwelling at 82 Williams Street in the city of Newport pursuant to a search warrant. Some of the papers seized and photographs of other material taken during the raid were introduced into evidence over defendant's continuing objections at a trial held on May 18, 1972. One of the witnesses presented by the state was Sergeant Edward J. Correia, a member of the state police who participated in the raid and who testified at trial that the papers seized were policy slips and race slips. It further appears that prior to his trial on May 18, 1972, on April 25, 1967, defendant's motion to suppress the evidence taken during the raid was denied.

The defendant now argues that it was error to deny his motion to suppress, contending that the search warrant in question was issued in violation of art. I, sec. 6, of the constitution of the state of Rhode Island and art. IV of amendments to the Constitution of the United States, which provide that search warrants shall issue only upon probable cause. This contention requires us to decide whether certain information furnished to the police by an

unidentified informer and corroborated by them to a certain extent was sufficient to supply the probable cause necessary to support the issuance of a search warrant. In determining the question of probable cause, we must confine ourselves to only that information that was brought to the magistrate's attention,[1] which in this case appears to be the matter recited in the complaint and accompanying affidavit. At this point a recitation of the facts set out in the aforementioned complaint and affidavit is in order so that an analysis of them can be made for the purpose of determining probable cause.

In the complaint in question, Trooper Harold J. Miller, Jr., stated that he had reason to believe and did believe that certain racing sheets, betting sheets, and betting odds records were kept and used in gambling for money and other valuable considerations in certain rooms in a dwelling at 82 Williams Street, Newport, and that said rooms were occupied by "Donn Stanley Connell." Miller also stated that the complaint was based on Sergeant Correia's affidavit and his own personal observations of October 1 and 2, 1963. In his affidavit Correia stated that he had reason to believe and did believe that certain rooms at 82 Williams Street, Newport, within 48 hours previous to the making of the affidavit and complaint, were used as a common resort for gamblers for the purpose of gambling.

The affidavit contained the following facts on which Correia based his belief: (a) On September 30, 1963, an anonymous informer stated to Correia by telephone that he lived in the neighborhood of 82 Williams Street, Newport, Rhode Island, that he saw an unusual number of people enter and leave that address, that Donn Stanley Connell occupied the aforementioned address, and that the

---

[1]*Aguilar* v. *Texas*, 378 U. S. 108, 109 n.1, 84 S.Ct. 1509, 1511 n.1, 12 L.Ed.2d 723, 725 n.1 (1964).

address was used for gambling and bookmaking and that Connell was a bookie. (b) Correia and a fellow officer placed the house in question under observation on October 2, 1963, and saw Connell enter the house at 12:58 p.m. carrying papers, among which appeared to be an Armstrong Daily.[2] (c) The unidentified informant mentioned in (a) gave Correia the telephone number for the location mentioned in (a); Correia called this number and in most instances received a busy signal; on one such call a male voice answered, and Correia asked for "Donn"; the voice replied, "[T]his is Donn"; Correia then placed, and the voice at the other end accepted, a bet in the fourth race at Suffolk Downs. (d) Correia and another officer observed a number of persons entering 82 Williams Street on October 2, 1963; Correia stated further that by reason of personal observations made by him and expressed in this affidavit, the statements received in (a) and (c), and his own personal knowledge of the operation of bookmakers, he had reason to believe that the premises described in the affidavit were being used as a common resort for gamblers for the purpose of gambling.

In *State* v. *Nerney*, 110 R. I. 364, 292 A.2d 882 (1972), and *State* v. *Cannon*, 110 R. I. 246, 292 A.2d 219 (1972), we were confronted with the problem of finding probable cause for search warrants that were based on hearsay information that the police received from an informant. In those cases we held that on such a state of facts the question of whether or not an affidavit contained a constitutionally sufficient showing of probable cause must be determined under the guidelines established in *Aguilar* v. *Texas*, 378 U. S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964),

---

[2]Sergeant Edward J. Correia testified that this paper can be obtained at any newsstand, and it provides the names of the horses that are running on that particular day, the post position, the odds, what the horse goes off at, and if there is a horse scratched, it is so noted.

and *Spinelli* v. *United States*, 393 U. S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

In *Aguilar* the Court held that an affidavit may be based on hearsay information that did not reflect the direct personal observations of the affiant. However, the Court stated that in such a situation the magistrate had to be informed of some of the underlying circumstances on which the informant based his conclusions and some of the underlying circumstances on which the affiant concluded that the informant was "credible" or his information "reliable." "Otherwise, 'the inferences from the facts which lead to the complaint' will be drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' *Giordenello* v. *United States, supra,* at 486; *Johnson* v. *United States, supra,* at 14, or, as in this case, by an unidentified informant." *Aguilar* v. *Texas, supra* at 114-15, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. In *Spinelli* the Court explicated the standards set forth in *Aguilar* and indicated how they should be applied in a situation where the affidavit contains not only hearsay information but also the results of an independent police investigation of the informant's tip.

In the complaint in the instant case, Miller merely recites his suspicions and beliefs and does not set out any facts or circumstances from which a neutral magistrate could judge the validity of Miller's conclusions. Clearly, Miller's complaint, standing alone, does not measure up to the standard of probable cause as set forth by this court and the United States Supreme Court. "Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation. *Mere affirmance of belief or suspicion is not enough.*" (emphasis added) *Nathanson*

v. *United States,* 290 U. S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159, 162 (1933). *See also State* v. *LeBlanc,* 100 R. I. 523, 217 A.2d 471 (1966).

In *Spinelli, supra* at 415, 89 S.Ct. at 588-89, 21 L.Ed.2d at 643, the Supreme Court said that "[t]he informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered. * * * A magistrate cannot be said to have properly discharged his constitutional duty if he relies on an informer's tip which — even when partially corroborated — is not as reliable as one which passes *Aguilar's* requirements when standing alone." The information supplied by the informant in the affidavit in question in the present case is purely conclusory. The informant stated that Connell was a bookie, but no underlying facts or circumstances on which that conclusion was based were set out. The affidavit does not state that the informant ever made a bet with Connell, nor does it state any other fact which shows that the informant's conclusions were based on first-hand knowledge. A magistrate reading this affidavit would not be able to determine whether the informant spoke from personal observation or was merely relating what an unknown third party had said. Under the standards set forth in *Aguilar,* this defect would be fatal.

The affidavit in the instant case also fails to measure up to the second test set out in *Aguilar,* which is concerned with the "credibility" of the informant or the "reliability" of his information. Nowhere in the affidavit does the affiant state that his informant is reliable, nor does he set out the underlying facts and circumstances from which a neutral magistrate could judge the probability of the informant's credibility.

While it is true that the affidavit recited certain observations made by the police, none of these observations would put Connell in criminal circumstances. The fact that a number of people entered 82 Williams Street and left after a short visit "* * * is certainly not sufficient probable cause that gambling was taking place within the building. The number of dwellings which would be suspected on such evidence would be incalculable." *State* v. *Butts*, 97 R. I. 147, 150, 196 A.2d 415, 416 (1964). The carrying of an Armstrong Daily certainly is not evidence of criminal activity. It can be bought at any newsstand, as Sergeant Correia testified.

The fact that Sergeant Correia was able to place a bet when he dialed the telephone number supplied by the informant did not furnish probable cause that would support the issuance of a warrant. It does not appear in the affidavit that the police verified the telephone number given them as the one which did in fact belong to 82 Williams Street. A magistrate reading the affidavit in question would not be able to discern whether Correia had placed a bet with someone at 82 Williams Street or someone at a totally different location. We are of the opinion that the informant's tip in this case failed to measure up to the standards set out in *Aguilar,* and we feel that the facts in this case closely paralleled those found in *Spinelli.* In *Spinelli* the Court found, as is the case here, that the informant's tip was defective under *Aguilar* and that "* * * the allegations detailing the FBI's surveillance of Spinelli and its investigation of the telephone company records contain no suggestion of criminal conduct when taken by themselves — and they are not endowed with an aura of suspicion by virtue of the informer's tip." *Spinelli* v. *United States, supra* at 418, 89 S.Ct. at 590, 21 L.Ed.2d at 645. In the instant case police observations of the defendant failed to place him in criminal circum-

612

stances, and the informant's tip failed to pass the standards set out in *Aguilar* and *Spinelli*.

In each case the defendant's exception is sustained, the judgment entered therein is reversed, and the cases are remitted to the Superior Court for further proceedings.

*Richard J. Israel*, Attorney General, *Donald P. Ryan*, Asst. Attorney General, for plaintiff.

*Moore, Virgadamo, Boyle & Lynch, Jeremiah C. Lynch, Jr.*, for defendant.