STATE

v.

**William S. RICCI.**

No. 82–531–C.A.

Supreme Court of Rhode Island.

Feb. 8, 1984.

Dennis J. Roberts II, Atty. Gen., John J. McMahon, Sp. Asst. Atty. Gen., for plaintiff.

John F. Cicilline, Providence, for defendant.

## OPINION

SHEA, Justice.

The defendant, William S. Ricci, appeals from a Superior Court conviction of receiving stolen goods worth over $500 in violation of G.L.1956 (1969 Reenactment) §§ 11–41–2 and –5.[1] He was sentenced to four years at the Adult Correctional Institutions with two years suspended and two years' probation to commence upon his release. The defendant's appeal raises as error matters relating to a search warrant and the admission of certain exhibits and testimony despite the state's alleged lack of compliance with Rule 16 of the Superior Court Rules of Criminal Procedure. The defendant also challenges portions of the jury instructions. We affirm.

On March 5, 1979, a theft occurred at Jeremiah Jewelry, Inc., resulting in a loss of up to one million pairs of earrings collectively valued at approximately $40,000. Two months later an unnamed customer of Jeremiah, Inc., showed the owners, Bruce and Andrew Jeremiah (the Jeremiahs), a sample of earrings given to him by defendant. Both the customer and the Jeremiahs recognized the earrings as the product of Jeremiah, Inc., and as part of the stolen goods. This information was reported to the police.

After further investigation, a detective of the Providence police department and a lieutenant of the Pawtucket police department applied for a warrant to search Ricci, Inc., defendant's place of business. The affidavit submitted to a District Court judge included allegations that the unnamed customer of Jeremiah, Inc., was approached by defendant and was given a sample of earrings available for sale and that defendant told the customer that he had as many of these enamel-plated earrings as the customer wanted. It was further alleged that an independent investigation by the police ascertained that the metal findings contained in these samples were manufactured by the Evans Findings Co., Inc., exclusively for Jeremiah, Inc., and that they were never sold to any other company. Investigation also disclosed that defendant conducted a jewelry business at the location to be searched. The sample of jewelry that had been given to the unnamed customer was presented to the District Court judge with the application. The warrant was issued for a search of Ricci, Inc.

The police asked Andrew Jeremiah, because of his knowledge of the jewelry in question, to assist them in the search of Ricci, Inc., so that he could identify for them the jewelry allegedly stolen. He par-

---

1. In 1981 the Legislature reenacted §§ 11–41–2 and –5 without change. General Laws 1956 (1981 Reenactment) §§ 11–41–2 and –5.

ticipated as requested. They searched systematically and found many items still in their original Jeremiah, Inc., containers. Whenever allegedly stolen items were discovered grouped on display cards with non-stolen items, the entire card was seized by the police. In all, hundreds of thousands of earrings amounting to about 5 percent of the Ricci, Inc., inventory were seized.

During testimony, Andrew Jeremiah utilized several photographs and specimens of powdered colored glass to assist the jury in better understanding his company's unique enameling process. Defense counsel objected to the introduction of these photographs and the powdered glass on the ground that the Super.R.Crim.P. 16 discovery order had been violated. The court overruled the objection on the ground that admission of these materials was not violative of that rule. The state advised the court that it had no objection to a continuance so that defense counsel could examine the materials. No continuance was requested, however. The defendant also objected to the testimony of Peter Evans, an owner of Evans Findings Co., Inc., on the ground that he was not listed by the state as a witness. That objection was also overruled.

In lengthy jury instructions, the court explained the four elements of the offense that the state had to prove beyond a reasonable doubt. One portion of the instructions—knowledge sufficient to satisfy a reasonable person that the property was stolen—was given after defendant had made an objection to the initial charge. Following conviction and the denial of a

motion for new trial, defendant filed this appeal.

The first issue we consider is whether the trial justice erred in finding probable cause for the issuance of a search warrant. The defendant claims there was insufficient information in the affidavit to allow the issuing judge to determine independently whether the informant was credible or his information reliable. This will be our first opportunity to consider the issue of probable cause for a search warrant since the United States Supreme Court's recent decision in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in which the Supreme Court purported to abandon the *Aguilar-Spinelli* test for probable cause.

The Fourth Amendment to the United States Constitution proscribes the issuance of a search warrant except upon probable cause, supported by oath or affirmation and particularly including a description of the place to be searched and the persons or things to be seized. These proscriptions are enforceable against the States through the Fourteenth Amendment. *Ker v. California,* 374 U.S. 23, 33, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726, 738 (1963).

Until recently, the applicable principles controlling courts, including ours,[2] in instances in which the police seek a search warrant based on information supplied to them by a confidential informer, were those promulgated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), as interpreted in *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).[3]

---

**2.** *See, e.g., State v. Joseph,* 114 R.I. 596, 337 A.2d 523 (1975); *State v. Nerney,* 110 R.I. 364, 292 A.2d 882 (1972); *State v. Cannon,* 110 R.I. 246, 292 A.2d 219 (1972); *State v. Roach,* 106 R.I. 280, 259 A.2d 119 (1969).

**3.** The "two-pronged test" of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), essentially required a showing of "some of the underlying circumstances" relating both to the informer's conclusion that the law is being violated (or that the objects to be sought may be found where he claims they are located) and to the affiant's conclusion that his

informer or the information he supplies is trustworthy.

In *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court delineated how *Aguilar's* "two-pronged test" should be applied. First, it said that the magistrate should apply the *Aguilar* standards as the benchmark against which to measure the informant's report. If the tip is found inadequate, the magistrate should refuse to issue the warrant unless he is prepared to say on the basis of other information supplied under oath that it can "fairly be said that the tip, even when certain parts of it have been corroborated by

The United States Supreme Court, in *Gates,* abandoned the "two-pronged test" of *Aguilar* and *Spinelli* and in its place reaffirmed "the totality of the circumstances analysis that traditionally has informed probable cause determinations."[4] *Illinois v. Gates,* —— U.S. ——, ——, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983). The Court's concern was that probable-cause determinations had become "rigid" and that each prong of the test had assumed an "entirely independent character," *Id.* at ——, n. 5, 103 S.Ct. at 2327–28 n. 5, 76 L.Ed.2d at 543, n. 5, resulting in an "excessively technical dissection of informants' tips."[5] *Id.* at ——, 103 S.Ct. at 2330, 76 L.Ed.2d at 546. Instead, the Court believes a totality-of-the-circumstances approach to probable-cause determinations "which permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip" better serves the purposes of the Fourth Amendment. *Id.*

The Court was quick to point out, however, that an informant's veracity, reliability, and basis of knowledge remain "highly relevant." *Id.* at ——, 103 S.Ct. at 2327, 76 L.Ed.2d at 542. In the Court's opinion, however, these factors "should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* at ——, 103 S.Ct. at 2328, 76 L.Ed.2d at 544. According to this totality-of-the-circumstances approach, "a deficiency in one [prong] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other [prong] or by some other indicia of reliability." *Id.* at ——, 103 S.Ct. at 2329, 76 L.Ed.2d at 545.

In applying the totality-of-the-circumstances approach,

"[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed." *Id.* at ——, 103 S.Ct. at 2332, 76 L.Ed.2d at 548.

Although *Illinois v. Gates* apparently relaxes the criteria for probable-cause determinations because of the broad meaning that can be given to the "totality of the circumstances" approach, it does not seem to us that it has abandoned the "two-pronged test" of *Aguilar* and *Spinelli.* Veracity, reliability, and basis of knowledge all remain "highly relevant" factors, "closely intertwined [with] * * * the common-sense, practical question whether there is 'probable cause' * * *." *Id.* at ——, 103 S.Ct. 2327–28, 76 L.Ed.2d at 542–43. The *Gates* Court itself is of the opinion that *Aguilar* "suggests that the two prongs were intended simply as guides to a magistrate's determination of probable cause, not as inflexible, independent requirements applicable in every case." *Gates,* —— U.S. at ——, n. 6, 103 S.Ct. at 2328 n. 6, 76 L.Ed.2d at 543, n. 6. The Court in *Aguilar* required only that the magistrate be informed of "some of the underlying circumstances." *Aguilar,* 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. And *Spinelli* suggests that a tip inadequate under *Aguilar* can be bol-

---

independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration[.]" *Spinelli,* 393 U.S. at 415, 89 S.Ct. at 588, 21 L.Ed.2d at 643 (1969).

4. *See United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

5. *See, e.g., People v. Brethauer,* 174 Colo. 29, 482 P.2d 369 (1971); *People v. Palanza,* 55 Ill.App.3d 1028, 13 Ill.Dec. 752, 371 N.E.2d 687 (1978); *Stanley v. State,* 19 Md.App. 508, 313 A.2d 847 (1974); *Bridger v. State,* 503 S.W.2d 801 (Tex.Cr.App.1974).

stered by independent corroboration. *Spinelli*, 393 U.S. at 415, 89 S.Ct. at 588, 21 L.Ed.2d at 643.

Our reading of *Gates* leads us to the conclusion that only the rigid application of the "two-pronged test" has been abandoned, not the test itself. Such rigidity runs afoul of what the Supreme Court intended when it decided those cases. This court has continually adhered to the original meaning of *Aguilar* and *Spinelli*. Our application of the test has never been rigid, but rather has been flexible and based upon " 'factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Illinois v. Gates,* —— U.S. at ——, 103 S.Ct. at 2328, 76 L.Ed.2d at 543.

*State v. Cannon,* 110 R.I. 246, 292 A.2d 219 (1972), articulates what consistently has been our view:

> "We test the affidavit in this case by [the *Aguilar-Spinelli*] principles and do so heedful of the Supreme Court's admonitions and teachings that affidavits are 'normally drafted by nonlawyers in the midst and haste of a criminal investigation'; that they 'must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion'; that '[t]echnical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area'; and that '[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.' " *Id.* at 250, 292 A.2d at 221–22.

This rationale was further illuminated in *State v. Nerney,* 110 R.I. 364, 292 A.2d 882 (1972).

> "[I]t must be kept in mind that while a showing of probable cause is a prerequisite to the issuance of a search warrant,

there is a significant difference between the quantum of proof necessary to establish guilt and the degree of proof necessary to establish the probable cause which justifies the issuance of a search warrant. It is well established that an affidavit offered in support of a search warrant should not be judged as if it had been drafted by one schooled in the niceties of the law nor should it be interpreted in a hypertechnical manner. All that is required for the issuance of a search warrant is that a common-sense evaluation of the entire affidavit, together with the reasonable inferences which can be drawn therefrom, leads to the conclusion that there is probable cause to search the premises described in the affidavit."[6] *Id.* at 365–66, 292 A.2d at 883.

The above discussion clearly demonstrates that this court has adhered to the original meaning of *Aguilar* and *Spinelli* and that our treatment of the issue conforms with what we believe the Court intended in *Gates*. When the Supreme Court reaffirmed the traditional totality-of-the-circumstances approach, it was responding to the rigidity that some states have given the "two-pronged test." Ours is not such a state. Rather, we believe the principles that have controlled our determinations remain valid in light of *Gates* and need not change in any way.

■ In this case, the District Court judge who issued the search warrant had before him affidavits from officers of the Providence and Pawtucket police departments. Attached to one affidavit was a letter from Evans Findings Co., Inc., and a sample earring given to the informant by defendant. This affidavit stated that the informant was approached by defendant and presented with samples of earrings that defendant was offering for sale. It also asserted that defendant told the informant that he had as

---

**6.** *See State v. Roach,* 106 R.I. 280, 283–84, 259 A.2d 119, 122 (1969). "While it is well established that 'only the probability and not a prima facie showing of criminal activity is the standard of probable cause,' *Spinelli v. United*

*States, supra,* it is also clear that the record must contain evidence which would arouse something more than a mere suspicion of the guilt of the accused." *Id.*

many pairs of similar earrings as the informant might want. The informant, recognizing that the samples were manufactured by Jeremiah, Inc., and not by defendant, brought them to the Jeremiahs. They were later turned over to the police and eventually presented to the issuing District Court judge. These facts show that the informant was speaking from first-hand knowledge, based both on his personal observations and on his conversation with defendant. This is sufficient to establish the informant's basis of knowledge. *United States v. Harris,* 403 U.S. 573, 581, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723, 732 (1971).

■ The defendant contends that the search warrant was defective because there was no substantial basis to confirm the informant's veracity. We disagree. Veracity may be established either by showing the reliability of the informant's information or by showing his credibility. 1 La-Fave, *Search and Seizure* § 3.3 at 502–03 (1978). While neither affidavit in this case contains an express assertion of the informant's veracity, or what is sometimes referred to as his "track record," this does not mean he was unbelievable. First-time informants can be found to be reliable. *Jaben v. United States,* 381 U.S. 214, 223–24, 85 S.Ct. 1365, 1370–71, 14 L.Ed.2d 345, 352 (1965). Probable-cause determinations can be based on practical, commonsense considerations. *Illinois v. Gates,* —— U.S. at ——, 103 S.Ct. at 2328, 76 L.Ed.2d at 543; *State v. Cannon,* 110 R.I. at 250, 292 A.2d at 221.

■ It is implicit from the allegations in the affidavit that the informant was correct in his belief that the sample earrings given to him were actually manufactured by Jeremiah, Inc. This accuracy tends to establish the reliability of his information. Furthermore, after the informant was presented with sample earrings and he realized that they were not manufactured by defendant, he turned them over to the real manufacturer, Jeremiah, Inc., along with the information about how they were obtained. This conduct is consistent with that of an honest, lawabiding citizen and also tends to establish his credibility. These facts provide a substantial basis to confirm the informant's veracity.

The informant's tip was bolstered by the independent investigation of the police officers. Two months prior to the informant's disclosure, the police investigated a breaking and entering and a larceny at Jeremiah, Inc., that netted approximately one million pairs of finished earrings. A large quantity of these earrings had a hard enamal finish unique to the Jeremiahs' product and included a special metal finding manufactured by Evans Findings Co., Inc., exclusively for Jeremiah, Inc. Attached to and incorporated by reference into an affidavit was a letter from Evans Findings to Jeremiah stating that the special metal findings were manufactured exclusively for Jeremiah, Inc., and were never sold to any other company. The sample earring attached to the affidavit matched the description of a sizable quantity of earrings stolen from Jeremiah, Inc. Finally, independent investigation confirmed that defendant was in the jewelry business, and it established the location of that business.

■ Regarding the location of the search, defendant contends that the facts were insufficient for the District Court judge reasonably to conclude that the sought-after earrings were actually on the premises of defendant's place of business. We disagree. The defendant, the informant, and Jeremiah, Inc., were all in the jewelry business. These earrings were offered for sale to the informant, a known customer of jewelry manufacturers, in the ordinary course of business. Ricci stated he had as many as the customer wanted. The fact that this offer was not made at Ricci, Inc., or that defendant did not state that the earrings were stored there is not significant under these circumstances. The District Court judge was entitled to draw all reasonable inferences from the affidavits at the time he issued the search warrant. *State v. Nerney,* 110 R.I. at 365, 292 A.2d at 883. In this case, it was not an unreason-

able inference to conclude that jewelry offered for sale in such a large quantity would be stored at defendant's place of business.

■ The issue of probable cause for the search warrant is before us on defendant's appeal from the denial of a pretrial motion to suppress evidence. In a case involving the application of constitutional safeguards, this court exercises its independent judgment and determines for itself whether those safeguards have been properly respected. *State v. Roberts,* R.I., 434 A.2d 257, 264 (1981); *State v. Smith,* 121 R.I. 138, 142, 396 A.2d 110, 113 (1979). "[T]his court does not sit as in *nisi prius,*" *id.,* "and therefore must give due deference to the trial court's determination of historical fact." *Roberts,* R.I., 434 A.2d at 264.

■ The portions of the record to which we have referred detail the information presented to the trial judge and the inferences that can be drawn therefrom. Relying on our review of the record, we conclude that the District Court judge had a substantial basis for finding probable cause.

■ The defendant contends that the description in the search warrant of jewelry to be seized does not satisfy the particularity requirement of the Fourth Amendment. The search warrant authorized the police to seize a "sizeable quantity of stolen earring [sic] and are described as; having a hard finish and a finding with a process exclusive of Jeremiah Incorporated, sample attached."

Brief as this may be, it is important to note that the warrant had attached to it a sample earring. This sample, like a picture, is worth a thousand words. It shows, with great particularity, what the police officers were to search for. Furthermore, the warrant stated that the sought-after earrings contained a special metal finding that had been manufactured exclusively for Jeremiah, Inc. This exclusive metal finding mentioned in the search warrant gave the warrant an almost fingerprintlike particularity.

■ The defendant cites *Application of Lafayette Academy, Inc.,* 610 F.2d 1 (1st Cir.1979), in support of his position. We find that case, however, to be easily distinguishable from the case at bar. The court in that case held that the warrant did not meet the Fourth Amendment's particularity requirement because it was "framed to allow seizure of most every sort of book or paper at the described premises, limited only by the qualification that the seized item be evidence of [illegality] * * *." *Id.* at 3. The warrant in this case limited the search to earrings having a hard enamel finish and containing a metal finding manufactured exclusively for Jeremiah, Inc. This description matched the sample earring that was attached to the search warrant. It provided a high degree of particularity. The United States and Rhode Island Constitutions require only that descriptions be as particular as the circumstances of each case will permit. *See Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627, 642 (1976); *State v. Kowal,* R.I., 423 A.2d 1380, 1382 (1980). We conclude from our independent examination of the search warrant that the description of jewelry to be seized was adequate.

■ We reach the same conclusion about the execution of the search warrant. The police had Andrew Jeremiah assist them in their search of Ricci, Inc., so that he could identify for them the jewelry allegedly stolen. Jeremiah accompanied the police and indicated to them jewelry that had been stolen from his company. The police then seized this jewelry. When stolen jewelry was discovered grouped on display cards along with nonstolen items ready for sale, the entire card was seized. The trial justice held that the search warrant was properly executed. Applying the "independent examination" standard of *State v. Smith,* 121 R.I. at 142, 396 A.2d at 113, we agree with the lower court on this matter too.

The defendant contends that the trial justice erred when he overruled objections to supposed violations of a Rule 16 dis-

covery order. Defense counsel objected to the marking for identification of certain state exhibits used by witnesses to make testimony more easily understood and to the subsequent admission into evidence of some of them. The objection was on the ground that the state failed to provide discovery of these items. He also objected to the court's allowing Peter Evans to testify because the defense was not informed that he would be a witness and the defense was not provided with a summary of his testimony.

Rule 16 is a "criminal discovery mechanism, [that] attempts to ensure that both parties receive the fullest possible presentation of the facts prior to trial." *State v. Concannon,* R.I., 457 A.2d 1350, 1353 (1983). Its purpose is to eliminate surprise and procedural prejudice. *Id.; State v. Coelho,* R.I., 454 A.2d 241, 245 (1982). When considering an alleged nondisclosure, a trial justice, and this court on appeal, should examine four factors: "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *State v. Coelho,* R.I., 454 A.2d at 245.

Involved here are photographs, powdered colored glass, earrings, findings, and cardboards containing jewelry, plus the testimony of Peter Evans. The record discloses that the prosecutor had learned of and received these exhibits from Andrew Jeremiah the same morning that they were introduced into evidence. Jeremiah proposed their use to help him explain to and help the jury to understand better his testimony about the jewelry-manufacturing process. The trial justice ruled these exhibits to be relevant since they were demonstrative evidence. No request for a continuance was made by the defense, even after the prosecutor stated that there was no objection to the granting of one.

Peter Evans was called, at the last · minute, to testify as a rebuttal witness for the state because the intended witness was suddenly unavailable. The state offered rebuttal because the defense, on cross-examination, had attacked the uniqueness of the jewelry manufactured by Jeremiah, Inc. Mr. Evans's testimony repeated what defendant already knew. It had been clearly stated in the letter from Evans Findings, Inc., to Jeremiah, Inc., that in fact he was from Evans Findings, Inc.; that Jeremiah, Inc., orders certain items from Evans Findings, Inc.; and that they are made exclusively for Jeremiah, Inc., and sold to no one else. This letter had been delivered to defendant in the information packet at the time of Ricci's arraignment. There could be no surprise here. Whether this evidence came from Evans himself or an employee of Evans, Inc., is inconsequential. There is no merit to this issue.

We are also convinced that there is no merit to the objection to the demonstrative evidence. The reasons for nondisclosure were that on the morning of trial the prosecutor learned that these exhibits were available and that he decided to use them to make Jeremiah's testimony more understandable. We believe this nondisclosure was inadvertent in that "the prosecution became aware of the discrepancy only as the witness's testimony was being prepared and not days or weeks earlier." *State v. Concannon,* R.I., 457 A.2d at 1353.

Since the nondisclosure was not deliberate, we must evaluate the procedural prejudice to defendant. *Id.* 457 A.2d at 1354. "To demonstrate procedural prejudice on appeal, defendant must show that had the information been disclosed, there is a likelihood that trial counsel using the undisclosed information could have created a reasonable doubt in the minds of one or more jurors to avoid a conviction." *Id.* The exhibits involved here are illustrative evidence, not direct evidence. The defendant raises no discovery objection to the testimonial evidence of Andrew Jeremiah, so we must assume that he was fully aware of its substance before trial. We do not believe defendant was prejudiced in any way by these nondisclosures. This case is a far cry from

that in either *State v. Verlaque,* R.I., 465 A.2d 207 (1983) or *State v. Coelho,* R.I., 454 A.2d 241 (1982). The trial justice was correct when he overruled defendant's objections.

Finally, the defendant claims that the trial justice improperly instructed the jury on the element of knowledge when he said that "he knew that they [the earrings] were stolen goods, or at the time of receiving the property he knew of facts sufficient to satisfy a reasonable person that the property was stolen." Giving instructions that included a "reasonable person" standard allowed the jury, according to the defendant, to find knowledge based on something less than proof beyond a reasonable doubt. However, it is clear from the record that the trial justice repeatedly instructed the jury that the state must prove each element beyond a reasonable doubt. The instruction given in this case was correct and is supported by this court's holding in *State v. O'Neill,* 53 R.I. 497, 499, 167 A. 263, 264 (1933).

For the reasons given, the appeal of the defendant is denied and dismissed. The judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.