**STATE**

v.

**William A. MORTON.**

No. 88–92–C.A.

Supreme Court of Rhode Island.

May 24, 1989.

James E. O'Neil, Atty. Gen., Teresa M. Rusbino, Annie Goldberg, Asst. Attys. Gen., for plaintiff.

Catherine A. Gibran, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

PER CURIAM.

On May 2, 1989, the defendant, William A. Morton, through counsel, appeared before this court to show cause why his appeal from a Superior Court judgment finding him guilty of having committed first-de-

gree sexual assault should not be summarily dismissed. There are two critical issues in this appeal—one relates to the state's alleged withholding of information during the discovery process and the other concerns the photographic array arranged by the Newport police when the victim was identifying her assailant. Hereafter we shall refer to the defendant by his last name and to the victim as Betty.

In the summer of 1985 Morton was arrested for having committed a sexual assault upon Betty. On June 30, 1985, Morton and Betty had been part of a group that had been socializing outside the Treadway Inn in Newport. Betty, who was fifteen at that time, claimed that although she had seen Morton twice prior to that night, they were not friends nor did they really know each other. At approximately 3:15 a.m., Betty decided to walk home. Morton joined her, and they walked together for about forty-five minutes. Then Morton grabbed Betty by the neck and started to strangle her. Betty testified that she lost consciousness briefly, and when she awoke, she found herself in the woods with Morton forcing her to engage in sexual intercourse.

■ In responding to the defense request for the testimony expected from Betty's mother, the state reported (1) that the mother would testify about her daughter's condition on the date of the incident and (2) that it was the mother who had contacted the police. At trial, however, Morton argues, the mother included in her testimony a recital of Betty's identification of Morton as her assailant. The state, on the other hand, insists that the mother's disclosure was neither deliberate nor prejudicial. It should be noted that in her statement to the police, a copy of which was given to the defense before the trial, Betty stated that upon her return to her residence she told her mother about the assault. The investigating detective's statement, which was also furnished to the defense, refers to Betty's appearing at police headquarters at approximately 4:54 a.m. on "6–30–85" in the company of her mother to report that she had been sexually assaulted by Morton.

Both statements refer to Betty's conversation with her mother. It should have been obvious to the defense from the discovery that had been supplied to it that the mother would testify about what Betty had told her upon her early-morning arrival home.

■ Morton also faults the state for failing to provide his counsel with a hospital report until the day before the report's author was to testify. The record clearly indicates that the state was totally unaware of the report's existence until three days prior to trial. The report indicates an injury at the opening of the vagina. However, the physician, in cross-examination, made it clear that such an injury could just as well occur in an episode where the intercourse is consensual.

This court has said that in reviewing a complaint of nondisclosure, there are four factors to be considered: (1) the reason for nondisclosure, (2) the extent of prejudice to the demanding party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors. *State v. Boucher*, 542 A.2d 236, 241 (R.I.1988); *State v. Ricci*, 472 A.2d 291, 299 (R.I.1984).

Here Morton has shown neither a deliberate withholding of evidence nor any indication that the state's tardiness prejudiced him. We can see no abuse of the trial justice's discretion.

■ The Newport police presented Betty with a photographic array that contained the photographs of five individuals. Three of the five pictures had height scales in the background, informing the viewer that each of the three subjects were at least six feet tall. Morton is about five feet, six inches tall. The remaining photos depicted Morton and another individual described as having "dark hair and a stocky build." Such an arrangement, in Morton's opinion, was unnecessarily suggestive.

In *State v. Brown*, 549 A.2d 1373, 1379 (R.I.1988), we once again stressed that in a determination of whether an identification procedure is so unnecessarily suggestive as to violate a defendant's constitutional right to due process of law, the trial justice must

examine the totality of the circumstances [1] and weigh the suggestive nature of the procedure against the independent reliability of the identification.[2]

At the motion to suppress, Betty explained to the trial justice that when viewing the photo array, she focused on the faces of the individuals depicted, rather than on the backgrounds. As she viewed each subject, she mentally superimposed upon the subject's head a red cap with Coors across its front. During the evening in question she had spent a considerable amount of time in Morton's company and he conceded that he was wearing the Coors cap on June 30, 1985. There is no evidence that would indicate that Betty's ability to observe had been diminished by the ingestion of alcohol. Consequently, based on the totality of the circumstances, our finding is that the trial justice was correct in denying Morton's motion to suppress the identification.

The defendant's appeal is denied and dismissed. The judgment of conviction is affirmed.

---

1. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967).

2. *Manson v. Brathwaite,* 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154 (1977).