337 A.2d 523.

STATE *vs.* EDWIN P. JOSEPH, JR.

MAY 12, 1975.

PRESENT: Roberts, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This is the state's appeal from a judgment entered in the Superior Court granting the defendant's motions to suppress evidence and dismiss two indictments which charged him with different possessory offenses—possession of counterfeit money and possession of four stolen radios. The pivotal issue is the sufficiency of two nearly identical affidavits submitted by the Westerly police to a judge of the District Court who then issued two search warrants. One warrant authorized the search of the defendant's automobile, and the other warrant permitted a search of a two-story dwelling that was owned and occupied by the defendant's parents.

The record presented to us is, to say the least, scanty. It consists of a transcript of the trial justice's decision and the warrants and supporting affidavits. Following oral argument before us, counsel stipulated that (1) the counterfeit money was seized in the home, and (2) the radios were removed from defendant's automobile.

The affidavits were executed by the acting chief of police. Each affidavit alleged that information supplied to the chief by a reliable confidential informer indicated that at 2:00 p.m. on February 11, 1971, the informant met defendant on Canal Street in Westerly and that at that time defendant attempted to sell the informant some counterfeit $10 bills. The informant, who knew defendant, also told the chief that the bills were in a box on the floor of defendant's 1965 green Mustang. The box, he said, contained more than $50,000 in counterfeit money. The chief then averred that after receipt of this information the police placed the Mustang and the home of defendant's parents under surveillance. The vehicle was parked on the parents' premises. The chief concluded the affidavit which sought a search of the automobile by expressing his belief that counterfeits were to be found in the Mustang. He finished the affidavit relating to the proposed search of the dwelling by saying that it was his belief that the counterfeits were to be found there.

The trial justice who heard the suppression motion faulted the affidavits because of the chief's failure to establish the reliability of his source of information. In his affidavit, the chief had described his informant as one "* * * who has been reliable in the past, and has led to the arrest and convictions of persons in the past." In his decision, the trial justice stated that the lack of specifics as to what particular convictions were attributable to the informant's past efforts offered no basis upon which the requisite reliability of the informant could be established. We cannot endorse this

view. However, even though we fault the trial justice's reasoning, we find that the suppression of the evidence relating to the counterfeit charge was correct.

The applicable principles which control our decision here have been articulated by this court in a number of cases including *State* v. *Soroka,* 112 R. I. 392, 311 A.2d 45 (1973); *State* v. *Nerney,* 110 R. I. 364, 292 A.2d 882 (1972); *State* v. *Cannon,* 110 R. I. 246, 292 A.2d 219 (1972); *State* v. *Roach,* 106 R. I. 280, 259 A.2d 119 (1969), where we have recognized that in instances in which the police seek a search warrant on information supplied to them by a confidential informer the standards to be supplied are those promulgated in *Aguilar* v. *Texas,* 378 U. S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), as explicated in *Spinelli* v. *United States,* 393 U. S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In essence, the *Aguilar* rule requires a showing of "some of the underlying circumstances" relating both to the informer's conclusion that the law is being violated, or that the objects to be sought may be found where he claims they are located, and to the affiant's conclusion that his informer or the information he supplies is trustworthy.

In considering whether the affidavits submitted to the District Court judge sufficiently established the reliability of the confidential informant, we are aware that the affidavits must be tested in a commonsense and realistic fashion. The constitutional interdiction is not against all searches and seizures, but only those that are unreasonable. *Cady* v. *Dombrowski,* 413 U. S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *United States* v. *Harris,* 403 U. S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States* v. *Ventresca,* 380 U. S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

In *State* v. *Cannon, supra,* we rejected a defense contention that an unidentified informer's trustworthiness could be verified only by the affiant's recitation of the convictions

that had resulted from the informer's prior disclosures. An arrest, said the defense in *Cannon*, was a mere accusation which, unless followed by a conviction, did nothing to establish the requisite reliability. Not so, we said, and then pointed out that there can be a variety of factors having no relevance to the informer's veracity and reliability that may prohibit the factfinder from reaching a guilty verdict.

As we address ourselves to the particular issue of a lack of specifics as to prior convictions, we are reminded by our consideration of the plethora of litigation that has evolved from police reliance on the unidentified informant that it is rare to find two affidavits that are identical in all respects. The disparity is understandable when one considers that the affidavits are usually prepared when the police are in the midst of an investigation and time is of the essence. A detailed analysis of cases that have language similar to that used by Westerly's acting chief can be found in *State v. Kraft*, 269 Md. 583, 307 A.2d 683 (1973). There, the Maryland Court of Appeals gave its approbation to an affidavit in which an informant was described as "a reliably established informant" who was "responsible for eleven narcotics arrests," and a second informant was described as one "who has provided reliable information to this Dept. for the past six months."

Among the cases discussed in *Kraft* are four that were cited in *State v. Cannon, supra*, at 253 n.10, 292 A.2d at 223 n.10. They are *United States v. Buonomo*, 441 F.2d 922 (7th Cir. 1971);[1] *United States v. Shipstead*, 433 F.2d 368 (9th Cir. 1970);[2] *United States v. Kidd*, 407 F.2d 1316

---

[1] The informant was described as having supplied reliable information in the past.

[2] The affiant reported that his informer had "* * * supplied law enforcement officers with information over the last five or six months which has resulted in three arrests."

(6th Cir. 1969);[3] *United States* v. *Rich,* 407 F.2d 934 (5th Cir. 1969).[4] The validity of the warrants in each of those four cases was upheld. In *Buonomo,* the defendant made the same objection being made here—a lack of detail as to the informer's reliability. However, the federal court noted that the informant told of how on the day before the affidavit was executed he had observed in the defendant's home a large quantity of counterfeit motor vehicle title certificates which the defendant had offered to sell to him. Again in *Kidd,* the informant told the affiant he had seen the contraband ("moonshine" whiskey) in the defendant's possession on the day the affidavit was executed. It was pointed out in *Kidd* that the Court in *Spinelli* emphasized that the reliability facet of the *Aguilar* test could have been satisfied by a declaration by the affiant of his informer's reliability.

We would also cite *State* v. *Perry,* 59 N. J. 383, 283 A.2d 330 (1971), and *Warren* v. *Commonwealth,* 214 Va. 600, 202 S.E.2d 885 (1974). The New Jersey Supreme Court ruled that an affiant's statement that he had said that his informer "has in the past given reliable information leading to arrests" established the informer's reliability. Virginia's highest court affirmed an affidavit in which an assistant prosecutor had stated that the informer had "on numerous occasions" supplied information which had "proven to be correct."

This court in *State* v. *Nerney, supra,* emphasized that in the evaluation of affidavits submitted to a magistrate who may issue a search warrant, the issue is probable cause, not guilt, and the evaluator should keep in mind that the affi-

---

[3] The informer was referred to as a confidential and reliable man who had "proved to be reliable on many occasions in the immediate past."

[4] The affiant pictured his informer as one "* * * who has on repeated occasions in the past furnished reliable and credible information * * *."

davit in most instances has been drafted by one who has not been schooled in the niceties of the law.

Here, we have an affidavit which contains the informant's personal observations and knowledge of an incident that occurred within hours of the execution of the affidavit. The chief's description of the informer's past performances was not a bald conclusionary statement. It was an explanation given under oath and it told the District Court judge that the chief's conclusion was based on the fact that the informer's prior tips had led to arrests and convictions.

While some detailing of an informant's track record might be desirable, it is not a necessity. A realistic view of what went on in Westerly as the police investigated the report of the counterfeit money would indicate that the chief had other things on his mind besides reaching into the files to get the dates and times when the informer had come up with good information. We would also emphasize that an affiant who takes pains to particularize his informer's past accomplishments runs a risk of revealing his informer's identity. Finally, as a practical matter, we must realize that the undisclosed informer can be a valuable tool to the officer who is charged with the duty of solving crimes and charging the accused. The police soon give up on an informer whose disclosures fail to produce results. Such individuals cannot fit the category reserved for the reliable informer.

As to those who are concerned with the possibility that the informer is a product of an overzealous officer's imagination, we would refer to our recent ruling in *State* v. *Cofone*, 112 R. I. 760, 315 A.2d 752 (1974). There, we emphasized that when an affidavit is presented to an issuing magistrate, such as a District Court judge, his concern is not with the truth of the hearsay but with whether the affiant is telling the truth. If he is doubtful on that score, or if he finds that an affiant has exhibited bad faith or made a misrepresentation, the magistrate may require that the in-

formant be identified or produced, or he may refuse to issue the warrant.

Having had our say as to the informer's reliability, we turn now to the actual searches—first the house and then on to the automobile.

The search of the dwelling presents a somewhat familiar picture. Even though the chief reports in his affidavit that his men had placed the home under surveillance, the affidavit tells us nothing of what they observed—if indeed anything occurred. There is a complete absence of any nexus between the home and the counterfeits. The officers on watch apparently saw no one take the box and its contents from the Mustang and bring it into the Josephs' home. The informer is of no help. He placed the contraband in the vehicle in the early afternoon. There is a lack of any factual data that would give rise to a probability of a transfer of the bogus cash from the vehicle to the home.

Man's home is still regarded as his castle and any intrusion on this domain must be based on something more than suspicion. We cannot assume probable cause by what was uncovered in the search. Rather, probable cause must be found within the four corners of the chief's affidavit. There is a gap here which is similar to the one that was discussed in *State* v. *Roach, supra.* Roach was charged with the illegal possession of lottery tickets. The informant had told a state police dectective that earlier in that week he had purchased tickets from Roach and he had seen the defendant with more tickets that day and he thought that Roach and a bookie were going to an area near a local racetrack. During a 2-hour surveillance, the detective saw Roach do nothing more than move up to a fence where he could observe the running of the third race. We faulted the trooper's reliance on the information he received because his source had failed to tell the officer that Roach would be carrying the contraband while he was in the vicinity of the track.

So, too, in the case before us, there is nothing from the report made by the informant that would support a reasonable inference that what the officers were looking for was in the Josephs' home. Consequently, here, as in *Roach,* we find a lack of the information requisite to establish the necessary probable cause to enter and search the home.

The discovery of the radios poses a different problem. The warrants did not authorize a search for them.

We start with the proposition first articulated many years ago by the Supreme Court that the fourth-amendment requirement that a search warrant shall particularly describe "the place to be searched and the persons or things to be seized" was designed to make a general search impossible by preventing the seizure of one thing under a warrant describing another. Nothing, the Court said, was to be left to the discretion of the officer executing the warrant. *Marron* v. *United States,* 275 U. S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). However, the Court has also repeatedly ru'ed that certain objects, if they fall within the "plain view" of an officer who has a right to be in the position to have that view may be seized without a warrant and introduced into evidence. *Harris* v. *United States,* 390 U. S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Not just any item may be seized, however. Since *Warden* v. *Hayden,* 387 U. S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), items subject to seizure are no longer limited to contraband or instruments of the crime, but "[t]here must, of course, be a nexus * * * between the item to be seized and criminal behavior." *Warden* v. *Hayden, supra,* at 307, 87 S.Ct. at 1650, 18 L.Ed.2d at 792. The plain-view exception does not dispense with the necessity for probable cause to justify the seizure, it merely allows the seizure without the necessity of a previously obtained warrant. The plain-view doctrine does not conflict with the constitution's goal of prohibiting general, exploratory searches. Once an otherwise legal search is in

progress, and the police inadvertently come across an item not named in the warrant, it would seem a needless inconvenience to require them to ignore it until they have obtained a warrant for its seizure. *Coolidge* v. *New Hampshire,* 403 U. S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Consequently, a well-recognized exception to the rule in *Marron* provides that an officer, who in the course of a valid search conducted under a warrant discovers goods which at the time of the discovery he has probable cause to believe are stolen, may seize such goods even though they are not listed on the warrant nor related to the crime which served as the basis for the warrant. *State* v. *Davenport,* 510 P.2d 78 (Alas. 1973); *State* v. *Hubbard,* 215 Kan. 42, 523 P.2d 387 (1974); *Commonwealth* v. *Wojcik,* 358 Mass. 623, 266 N.E.2d 645 (1971). It has been said that an officer who in the course of a lawful search uncovers evidence of another crime is not required to close his eyes to the realities of the situation. *Seymour* v. *United States,* 369 F.2d 825 (10th Cir. 1966). The difficulty which confronts us at this point is that the record presented to us is absolutely barren of any factual basis to which we could apply the principle of law we have just enunciated. Consequently, we shall remand this case to the Superior Court where the issue of the officer's belief as to the status of the radios can be litigated.

The state's appeal is sustained insofar as it relates to the stolen goods indictment, and is denied as it concerns the counterfeit money indictment.

*Julius C. Michaelson,* Attorney General, *William G. Brody,* Special Asst. Attorney General, for plaintiff.

*John P. Toscano, Jr.,* for defendant.