**STATE**

v.

**Robert H. READ and Walter T. Field, Jr.**

**No. 78–398–C.A.**

Supreme Court of Rhode Island.

July 7, 1980.

---

Dennis J. Roberts II, Atty. Gen., Alan R. Tate, Sp. Asst. Atty. Gen., for plaintiff.

Nolan & Dailey, Leo J. Dailey, Coventry, Salvatore L. Romano, Jr., Providence, for defendants.

## OPINION

WEISBERGER, Justice.

This case comes before us on an appeal by the state from a ruling of the Superior Court which granted the defendants' motions to suppress certain evidence obtained by Rhode Island park police and state police pursuant to a search warrant. The motions to suppress had been made as a preliminary step in the defense to a criminal information, which had been filed by an assistant attorney general, and which charged defendant Read with three counts and defendant Field with five counts of violating the Controlled Substances Act, chapter 28 of title 21, G.L.1956 (1968 Reenactment), as enacted by P.L.1974, ch. 183, § 2. In general the motions to suppress were directed towards physical evidence seized in the course of a search of a house, garage, and surrounding property and curtilage located on Division Road in West Greenwich, Rhode Island. Among the items seized were marijuana, a .22-caliber rifle, and a single-barrel shotgun from the house and garage, and approximately 1,650 pounds of marijuana which had been growing in fields adjacent to the house. The events leading up to the issuance of the search warrant and the seizure of the physical evidence were as follows.

On September 4, 1977, two auxiliary Rhode Island park police officers were on patrol in one of the gravel-bank sections of the Big River Management Area, owned by the state of Rhode Island. Visitors to this area are subject to an 8 p. m. curfew. Shortly after the curfew began, the officers ob-

served three youths, two of whom took flight at the appearance of the officers. The third youth ran towards an unattended vehicle nearby. As the young man jumped into the front seat of the vehicle, the contents of a cardboard box he was attempting to conceal fell onto the seat and into the officers' view. These contents included twelve clear plastic bags that contained marijuana and marijuana plant stems. Thereupon the officers arrested the youth, who was later identified as Joseph W. Bennett, seventeen years of age at the time of the arrest. The officers advised the suspect of his *Miranda* rights and informed him that if he cooperated in an investigation, his cooperation would be reported to the proper authorities but that no promises of lenience or other "deal" could be made by the officers. Bennett then told the officers that he had obtained the marijuana earlier that evening from the roof of a two-car garage located at telephone pole number 518, Division Road, West Greenwich. He further stated that the house and field adjacent thereto might possibly be "booby-trapped" with a trip-wire and a shotgun. He stated that he had seen between one and two tons of marijuana growing in the fields and wooded area near the house. He offered to show the officers the location of the property. Bennett accompanied the police to the described premises and pointed out the property as the place from which he had obtained the marijuana.

Thereafter, one of the officers applied to a justice of the Superior Court for a search warrant, supporting the application by the following affidavit:

"Your affiant upon oath states that he has reason to believe and does believe that grounds for such warrant exist and states the following facts on which such belief is founded on the following affidavit. On September 4th, 1977 at about 8:15 PM your affiant, R.I. Park Police officer Chester Welch and officer Griffon were patrolling a gravel bank area off Division Road in West Greenwich, R.I., the property of the State of Rhode Island, Department of Natural Resources when they observed a vehicle at the East End of said gravel bank. It was after the curfew hour of 8:00 PM. Officers Welch and Griffon approached the vehicle to check same out and inform any occupants of said curfew. There were three male subjects on a high bank near the vehicle. When the three subjects spotted the Park Police vehicle two stood at the top of the bank while the other ran toward the parked car. The subject running toward the car and officers Welch and Griffon arrived at the car at the same time. The subject jumped into the front seat and tried to conceal a cardboard box by throwing it across the seat. As he did the contents of said box fell out on the seat in full view of both officers. The other two subjects fled on foot. The contents of the box fell on the seat and was found to contain eleven clear plastic bags of suspect marijuana, one clear plastic bag containing stems from marijuana plants and a pipe used to smoke cannabis marijuana. The subject Joseph W. Bennett, dob:7/19/60 was advised of his arrest for possession of marijuana and advised of his constitutional rights. Joseph Bennett agreed to tell your affiant where the marijuana came from and to cooperate with our investigation. Joseph Bennett was advised that the proper authorities would be advised of his cooperation but no deal could be made. Joseph Bennett advised your affiant that the marijuana in his car, R.I. Registration GV848 had come from a garage located at pole 518, Division Road in West Greenwich, Rhode Island and agreed to show us the location where the marijuana came from. Joseph Bennett advised that the house and field where the marijuan[a] did come from might possibly be booby trapped with a tripwire and a shotgu[n]. Joseph Bennett stated that earlier this evening, September 4th, 1977 he and his two companions had been at the garage located at pole 518, Division Rd, West Greenwich and had taken the marijuana from the roof of a two car garage located there and had seen other marijuana growing in the fields and wood near the house. Jo-

seph Bennett stated there was more marijuana in the house and garage and in the fields surrounding the house. The subject, Joseph Bennett stated there was between one and two tons of marijuana on this property located at pole 518, Division Road in West Greenwich, Rhode Island. Joseph Bennett was taken in a police car and pointed out the house and property at pole 518, Division Road in West Greenwich, RI and advised this is where the marijuana came from that was found in his car. It is therefore requested that a search warrant be issued for this property and curtilage and dwelling ther[e]on located at NET&T pole 518, Division Road in West Greenwich, Rhode Island."

On the strength of the foregoing affidavit, the justice issued a warrant authorizing the search of

"[a] white two story wood frame dwelling with glass porch and white two car garage with overhead doors and attic and surrounding property and curtilage located on Division Road, Pole NET&T # 518, West Greenwich, Rhode Island,"

and authorized the seizure of a wide variety of controlled substances including marijuana, or cannabis, ancillary devices such as hypodermic needles and syringes, and a shotgun. The name of the owner or keeper of the premises was given on the warrant as "Robert Reed, alias John Doe."

After a hearing pursuant to the motions to suppress, a justice of the Superior Court granted the motions, setting forth the following grounds:

"The affidavit certainly lacks probable cause to search the premises in question; namely, property locations near Pole 518 on Division Road in West Greenwich. First of all, the affiant does not set forth any reliability upon the informant, adult [sic] informant, the arrestee, Joseph W. Bennett. There's no reliability set forth in the affidavit. There's not even an allegation that he knows Joseph W. Bennett. There's no track record set forth in the affidavit.

"Under the circumstances, the Court finds that the affidavit lacks probable cause, and will grant the motion to—both motions to suppress."

Essentially the trial justice believed that there was an insufficient basis upon which to determine the reliability of the named informant.

In support of this decision, defendants cite *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), which lays down the fundamental requirements for the contents of an affidavit to meet the requisite foundation of probable cause. The Court in *Aguilar* held that an affidavit in support of a request for a search warrant must contain "some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed * * * was 'credible' or his information 'reliable.' " *Id.* at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729. The Court went on to state that these elements could not be supplied by merely stating the conclusions of the officers who sought the search warrant, since the inferences from the facts that led to the application must "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime," *Johnson v. United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948).

In short, the determination of the existence or nonexistence of probable cause must be made by the judicial officer from facts set forth in the affidavit and may not constitute a mere acceptance of conclusory statements by the officer who seeks the warrant. It may be instructive to note the contents of the affidavit that was at issue in *Aguilar*. This affidavit read as follows:

"Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of law." 378 U.S. at 109, 84 S.Ct. at 1511, 12 L.Ed.2d at 725.

It may be seen from the foregoing affidavit that utterly no facts of any type were presented to the judicial officer in support of the conclusions provided by the police officers in *Aguilar*.

The Supreme Court again considered this subject in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In this case Mr. Justice Harlan, speaking for a majority of the Court, considered an affidavit that had been submitted by a federal officer in support of an application for a warrant to authorize the search of an apartment that was used by the petitioner and was allegedly the location of a gambling operation. This affidavit was very lengthy, containing numerous details of observations of the petitioner made by agents of the Federal Bureau of Investigation, all of which observations were found by the Court to be innocuous. The heart of the affidavit contained the following assertion:

> "The Federal Bureau of Investigation has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wagers and disseminating wagering information by means of the telephones which have been assigned [certain] numbers * *."
> *Id.* at 422, 89 S.Ct. at 592, 21 L.Ed.2d at 647.

The Court held that this affidavit did not meet the two-pronged test of *Aguilar* in that there were no facts from which a judicial officer could infer the credibility of the undisclosed informant and no facts from which the judicial officer could determine the means by which the informant had obtained the information he purported to convey to the federal officers. *Id.* at 416, 89 S.Ct. at 589, 21 L.Ed.2d at 643–44. The extensive details that had been included in the affidavit concerning the movements of the petitioner as observed by federal officers, the presence in the apartment of two telephones, and other innocuous pieces of information were not considered by the Court as sufficient to achieve the plateau of probable cause.

Two years later in *United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), a plurality of the Court appeared to retreat somewhat from the two-pronged test of *Aguilar*. In *Harris*, a warrant was issued by a federal magistrate authorizing the search of the premises of the respondent for untaxed whiskey. The affidavit had set forth in great detail that an undisclosed informant had purchased illicit whiskey from the described residence within the recent past. However, in regard to the reliability of the undisclosed informant, the affidavit contained only this assertion:

> "I have interviewed this person, found this person to be a prudent person * *."
> *Id.* at 575, 91 S.Ct. at 2078, 29 L.Ed.2d at 729.

In spite of the absence of any facts from which a judicial officer might infer reliability, the plurality held the affidavit to be adequate partly on the ground that the informant, by admitting his purchase of untaxed whiskey, had made a statement against his penal interest. The Court observed:

> "Common sense in the important daily affairs of life would induce a prudent and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interest, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search." *Id.* at 583, 91 S.Ct. at 2082, 29 L.Ed.2d at 734.

The plurality of the *Harris* Court referred to the landmark warrant case of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). The plurality pointed out that in *Jones* the Court had held that hearsay information from an undisclosed informant could support an inference of probable cause. The *Harris* plurality noted that in *Jones* the affidavit set forth that the informant had previously given correct information. The plurality pointed out, however, that

> "this Court in *Jones* never suggested that an averment of previous reliability was necessary. Indeed, when the inquiry is,

as it always must be in determining probable cause, whether the informant's *present* information is truthful or reliable, it is curious, at the very least, that Mr. Justice Harlan [in dissent] would place such stress on vague attributes of 'general background, employment . . position in the community . . . .' " *United States v. Harris*, 403 U.S. at 581–82, 91 S.Ct. at 2081, 29 L.Ed.2d at 733.

If we are to apply the rationale of the foregoing cases to the affidavit in the case at bar, our inquiry should be directed to whether the affidavit contains sufficient indicia of reliability and source of knowledge on the part of the named informant to warrant the judicial officer's finding probable cause from the facts stated by the applicant. It is noteworthy that in this case we have an informant who is named, who has himself admitted to the possession of a quantity of marijuana, and who has described the source from which he obtained the substance. These facts are corroborated by his pointing out the location to the officers and by the officers' own observations of the marijuana in the informant's possession. Certainly the statements made by the named informer are against his penal interest and would assist in supporting a criminal prosecution against him. A judicial officer could infer that one in the position of an arrestee would not be likely to exacerbate his circumstances by telling the arresting officers an untruthful account of his source of supply. Unlike the affidavits in *Aguilar* and *Spinelli*, this affidavit contains sufficient facts that the judicial officer may draw his own inferences and not rely wholly upon the conclusions drawn by the police. The circumstances described in the affidavit would tend to support the inference drawn by the issuing justice when he implicitly found the statements made by Bennett to be reliable.

It is, however, further argued by defendants that Bennett did not state he had ever been inside the house, that he said he had obtained the marijuana in his possession from the roof of a garage, and that his assertion that "there was more marijuana in the house" was not supported by any statement indicating how he knew there was marijuana there. The affidavit states that Bennett said "there was between one and two tons of marijuana on this property" and that Bennett said he had seen marijuana growing in the fields and woods nearby the house. From these statements, we believe that the issuing justice could draw the inference that it was more probable than not that this vast quantity of marijuana had been produced through the enterprise of the occupants of the dwelling-house and, if so, would undoubtedly have resulted in the secreting of the harvested product in the house as well as the garage. This court as well as the Supreme Court of the United States has drawn a very clear distinction between probable cause and proof beyond a reasonable doubt. *United States v. Harris*, 403 U.S. at 582–83, 91 S.Ct. at 2081, 29 L.Ed.2d at 733; *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Joseph*, 114 R.I. 596, 601, 337 A.2d 523, 526 (1975); *State v. Nerney*, 110 R.I. 364, 365, 292 A.2d 882, 883 (1972).

In *Brinegar, supra*, the predicate upon which the Court found probable cause to exist required the drawing of inferences on the basis of very limited facts. One of the two investigative agents who arrested Brinegar without a warrant had arrested him about five months earlier for illegally transporting liquor. This agent had seen Brinegar loading liquor into a car or truck in Joplin, Missouri, on at least two occasions during the preceding six months and knew him to have a reputation for hauling liquor. In the present instance the agents observed Brinegar driving a Ford automobile, which appeared to be "heavily loaded" and "weighted with something," headed from Joplin toward Vinita, Oklahoma. Brinegar increased his speed as he passed the officers. They gave chase, stopped the auto, and discovered twelve cases of liquor in the car. Inasmuch as the Supreme Court of the United States found probable cause for the search in this context where there was no warrant, *a fortiori* we should treat with preference the drawing of inferences by a judicial officer on the basis of facts set

forth in an affidavit in support of an application for a search warrant. In doubtful cases preference must always be given to the use of warrants in order not to discourage police officers from submitting their evidence to a judicial officer before acting. *United States v. Ventresca*, 380 U.S. 102, 105–07, 85 S.Ct. 741, 744–45, 13 L.Ed.2d 684, 687–88 (1965). We have recognized that officers acting without a warrant may draw inferences that a trier of fact could not utilize to achieve a determination of guilt at trial. *State v. Smith*, R.I., 396 A.2d 110, 113 (1979). Certainly a judicial officer may, as in this case, draw inferences in order to reach a determination of probable cause which might not be justified if utilized in support of a judgment of conviction.

In addition, we have said that in passing upon the sufficiency of an affidavit, courts must realize that such affidavits "in most instances ha[ve] been drafted by one who has not been schooled in the niceties of the law." *State v. Joseph*, 114 R.I. at 602, 337 A.2d at 526. A similar admonition was contained in *United States v. Harris*, 403 U.S. at 579, 91 S.Ct. at 2080, 29 L.Ed.2d at 731, where Chief Justice Burger warned against hypertechnical construction of an affidavit. We should give to a law-enforcement officer's affidavit a common-sense interpretation. *United States v. Ventresca*, 380 U.S. at 108, 85 S.Ct. at 746, 13 L.Ed.2d at 689. Such a common-sense interpretation applied to the facts of the case at bar would amply justify the issuing justice's determining that the named informant was credible and the justice's forming the belief as a prudent person that contraband was probably present in the dwelling-house, garage, curtilage, and adjacent fields referred to in the application for the warrant. Also, tested in the light of common sense and common knowledge, the inference drawn by the judicial officer, that those who deal in large quantities of cannabis may well also deal in other types of controlled substances, is not outside the ambit of probable cause. We therefore conclude that the trial justice erred in determining that the affidavit was insufficient to support the issuance of the search warrant.

Because of our determination of this issue, it is not necessary for us to address questions inherent in the facts of this case concerning distinctions that might have been drawn between the house and the garage on the one hand and the open fields on the other, *cf. Air Pollution Variance Board v. Western Alfalfa Corp.*, 416 U.S. 861, 94 S.Ct. 2114, 40 L.Ed.2d 607 (1974); *Hester v. United States*, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924) (both discussing the applicability of the Fourth Amendment to sights observed in open fields).

For the foregoing reasons, the appeal of the state is sustained, the order suppressing the evidence obtained pursuant to the search warrant is vacated, and the case is remanded to the Superior Court for further proceedings.