STATE

v.

**Frank Jacob KOWAL.**

No. 79-105-C.A.

Supreme Court of Rhode Island.

Dec. 9, 1980.

Dennis J. Roberts, II, Atty. Gen., Faith A. LaSalle, Sp. Asst. Atty. Gen., for plaintiff.

John Tramonti, Jr., Providence, Griffin & Higgins, Kirk Y. Griffin, Geline W. Williams, Boston, Mass., for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by the defendant, Frank Jacob Kowal, from a judgment of conviction in the Superior Court on six counts of illegal possession of controlled substances with intent to deliver, and one count of receiving stolen goods, to wit, assorted pharmaceutical drugs and implements of a value in excess of $500 in violation of G. L. 1956 (1969 Reenactment) § 11-41-2. The single issue raised on appeal is the validity of a search warrant which authorized the search of "[a] one story wood frame dwelling color white, numbered 9 Anderson Avenue, Coventry, R. I." The search warrant is challenged on the ground that it fails to describe with particularity the place for which probable cause to search had been established. The defendant asserts that the instant search warrant failed properly to limit the scope of the search. We are of the opinion that this search warrant described the premises to be searched and the things to be seized with reasonable specificity in the light of the probable cause presented to the issuing Jus-

tice of the District Court. The facts pertaining to the resolution of this issue are as follows.

In September 1976, more than 500,000 dosage units of various controlled substances were stolen from the Wyeth Laboratories in Andover, Massachusetts. Detective Sergeant Richard P. Sullivan, who was then in charge of the narcotics unit of the Rhode Island State Police, became engaged in an investigation together with officers of the Federal Drug Enforcement Administration in order to locate this quantity of drugs, whose approximate wholesale value was estimated at $134,000. As a culmination of his investigation, Sergeant Sullivan applied for a search warrant and in support of his application submitted an affidavit, which reads in pertinent part:

"I, Richard P. Sullivan, being duly sworn, depose and say: I am a Detective Sergeant in the Rhode Island State Police, in charge of the Narcotics Unit and I am presently conducting an investigation to determine the location of more than 500,000 dosage units of controlled substances stolen from Wyeth Laboratories at 7 Lowell Junction Road Connector, Andover, Massachusetts on or about September 24th, 1976. There were approximately 300 cartons stolen weighing about 6,000 pounds. An inventory of the stolen drugs, provided by Wyeth Laboratories, is attached hereto and made a part hereof.

"On January 18, 1977, Special Agent Robert Sampson of the United States Department of Justice, Drug Enforcement Administration, with whom I have been conducting this investigation. [sic] Agent Sampson advised me that he had received information that date from a confidential and reliable informant whose information in the past has resulted in several large seizures of controlled substances and subsequently resulted in the arrest of several persons for drug offenses. Agent Sampson advised me that he had received this date, information from his informant who stated that approximately one and one-half weeks ago, he, the informant, was at a house numbered 9 Anderson Avenue, Coventry, Rhode Island, where he was in the company of one Babe Kowal, who is the owner of Allyson Distributors of West Warwick, Rhode Island. The informant stated that he was in the garage in the cellar level at this house and observed numerous cartons, some marked 'Wyeth Meperidine Injection'. The informant advised that Babe Kowal lives directly next to the house numbered 9 Anderson Avenue, Coventry, Rhode Island.

"Your affiant in the past has arrested Frank Jacob Kowal, alias 'Babe', DOB: 11–14–26 and your affiant also knows that he lives directly next to Number 9 Anderson Avenue, Coventry, Rhode Island, in a white one-story ranch style house. Your affiant is also aware that Frank Kowal, alias Babe is the owner-operator of Allyson Distributors on Main Street, West Warwick, Rhode Island. A confidential source this date advised your affiant that Frank Kowal is the owner of Number 9 Anderson Avenue, Coventry, Rhode Island and rents the upper level of this house to one Barbara A. Cipolla and retains jurisdiction over the cellar level for his own personal and business storage.

"Two weeks ago your affiant received a telephone call from a confidential informant whose information in the past has led to several large seizures of contraband drugs and the arrest and conviction of several persons for drug offenses. He advised me at that time there was a large shipment of stolen drugs in a house somewhere in the Town of Coventry, Rhode Island.

"Yesterday, I met with this same informant and he advised me that within the last four days, he accompanied another individual to a house numbered 9 Anderson Avenue, Coventry, Rhode Island, which he described as a one-story white wood frame dwelling with the number 9 on the front. The second subject went into this house while the informant waited in the car and after several minutes the subject returned and handed the informant a Tubex syringe, marked Morphine Sulfate, 10 MG (⅙ gr) per CC,

bearing Lot Number 2762379, and the subject advised my informant that the syringe is part of stolen shipment from the State of Massachusetts and there were more of the same available for sale at this same address through Babe Kowal.

"The Lot Number 2762379 matches the Lot Number of 1,329 single dosage units taken in the September 24th, 1976 theft from Wyeth Laboratories of 7 Lowell Junction Road Connector, Andover, Massachusetts, (See the attached inventory). The approximate wholesale value of the stolen goods, according to Wyeth Laboratories, is $134,000.00."

The defendant argues that the affidavit clearly discloses that this dwelling house was divided into two units; the upper level was rented to one Barbara Cipolla, and the defendant retained jurisdiction over the cellar level for his own personal and business storage. He thus contends that a search warrant directed to the entire dwelling unit was a violation of the requirements of the Fourth Amendment to the United States Constitution and art. I, sec. 6 of the Declaration of Rights contained in the Constitution of the State of Rhode Island, as well as G. L. 1956 (1969 Reenactment) § 12–5–3,[1] all of which require that every search warrant shall particularly describe the place to be searched. *State v. Joseph*, 114 R.I. 596, 337 A.2d 523 (1975), reiterated the proposition that the Fourth Amendment requires a search warrant particularly to describe "the place to be searched and the persons or things to be seized." We noted that the purpose of this requirement was to make a general search impossible. *Id.* at 604, 337 A.2d at 527–28. Earlier, in *State v. Costakos*, 101 R.I. 692, 226 A.2d 695 (1967), we considered the application of this principle to a multiple dwelling. We stated therein that a search warrant must describe the place to be searched both "particularly" and "as nearly as may be." *Id.* at 694, 226 A.2d at 696. In analyzing the problem in *Costakos*, we quoted a passage from Cornelius, *Search and Seizure* § 205 at 295 (2d ed. 1930), which is equally pertinent in resolution of the issue in the case at bar:

"Where a building or the premises are described in the search warrant or affidavit by a single street number, and more than one family resides at such street number in the building, in a separate apartment * * * plainly upon principle a warrant directed to search the premises designated by such single number would be illegal and void, *unless there was something in the affidavit to connect each one of the occupants of the premises with the alleged unlawful act.* As single street numbers are now in many instances used to designate a large apartment building housing many families * * * plainly any other rule would work the gravest injustice to innocent occupants." (Emphasis added.)

In the case at bar, although the affidavit indicated that defendant Kowal reserved jurisdiction over the basement for storage purposes, the affidavit also indicated that an informant went to the house accompanied by another individual who was said to enter the house and return with a Tubex syringe that was identified by the informant as part of the stolen shipment. This portion of the affidavit could readily be construed as asserting his entry into the portion of the house above the level of the cellar. Further, the statements in the affidavit could give rise to the inference that a very large quantity of stolen drugs had been stored in this dwelling house under circumstances that would support probable cause to believe that both occupants were involved in the illegal enterprise.

"A warrant shall issue only on written application * * * specifically designating the place to be searched, the owner or occupant thereof, if known to the affiant, and the person or thing to be searched for, and establishing the grounds for issuing the warrant."

---

1. Although the defendant relies upon the particularity requirement in G. L. 1956 (1969 Reenactment) § 12–5–3, that provision was repealed by P. L. 1972, ch. 169, § 13. We note, however, that a similar particularity provision is now contained in Super.R.Crim.P. 41(c), which reads in pertinent part:

■ We recently observed in *State v. Read*, R.I., 416 A.2d 684 (1980) that "a judicial officer may * * * draw inferences in order to reach a determination of probable cause which might not be justified if utilized in support of a judgment of conviction." *Id.* 416 A.2d at 690. When the affidavit is viewed as a whole, the allegations therein amply support the inference drawn by the issuing justice that the entire dwelling unit and both occupants were involved in the storage of these stolen drugs. Further, the issuing justice could infer on the basis of ordinary experience in the facts of life that a person engaged in the storage of a great quantity of stolen narcotics and related substances would not place it in a portion of a single–family dwelling house without having first taken the precaution of making a confederate of his tenant. In drawing these inferences from the affidavit, the justice was following the principle that "affidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684, 689 (1965).

The defendant vigorously argues, however, that subsequent events showed that the tenant was not a party to this illegal transaction. In the course of the search, stolen drugs were found in the basement-level garage in the area retained by defendant, but no drugs were found in that portion of the house rented to the tenant. Although she was initially arrested, charges against her were ultimately dismissed.

■ The Supreme Court of the United States tersely stated in *Henry v. United States*, 361 U.S. 98, 104, 80 S.Ct. 168, 172, 4 L.Ed.2d 134, 139 (1959) that "an arrest is not justified by what the subsequent search discloses." In respect to a search warrant, similarly, probable cause must exist on the basis of information disclosed to the magistrate prior to the search. It cannot be buttressed by what the search discloses. *See Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The affidavit in support of the warrant must rest upon the foundation of its own adequacy without supplementary information obtained thereafter. *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). Conversely, the search warrant may not be challenged as issued without probable cause merely because one or more of the persons toward whom the probable cause pointed turned out ultimately to be innocent. Any contrary rule would require the evidentiary support necessary for probable cause to rise to the level of proof beyond a reasonable doubt, a concept that has been clearly rejected by the Supreme Court of the United States and by this court. *United States v. Harris*, 403 U.S. 573, 584, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723, 734 (1971); *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Read*, R.I., 416 A.2d at 689; *State v. Joseph*, 114 R.I. 596, 601, 337 A.2d 523, 526 (1975); *State v. Nerney*, 110 R.I. 364, 365, 292 A.2d 882, 883 (1972). Consequently, the probable cause that supported the issuance of the warrant and the description contained therein could not be extinguished by subsequent findings. Since the issuing justice had probable cause to believe that the entire dwelling unit contained stolen controlled substances, the description set forth in the warrant which included the entire one-story wood-frame dwelling and identified the two occupants was solidly based upon material in the affidavit "to connect each one of the occupants of the premises with the alleged unlawful act." Cornelius, *Search and Seizure, supra* at 496. Therefore, the trial justice was correct in denying the motion to suppress. In light of our determination of this issue, it will be unnecessary to address the question raised by the state at oral argument concerning the standing of this defendant to challenge the description of the premises contained in the warrant.

For the foregoing reasons, the defendant's appeal is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers in the case may be remitted to the Superior Court.