DECISION
Defendant Thomas Byrne ("Byrne" or "defendant") moves this Court to suppress all evidence obtained from his residence on the grounds that the warrant issued to search his residence lacked probable cause. The defendant also argues that the Electronic Imagining Devices Act, G.L. 1956 § 11-64-2, violates several provisions of the United States Constitution. The State of Rhode Island ("State") objects to the motion, countering that probable cause did exist to properly issue the warrant. Alternatively, the State asks the Court to recognize a good faith exception to the probable cause requirement for issuance of search warrants. Jurisdiction is pursuant to Rule 41(f) of the Superior Court Rules of Criminal Procedure.
 I Facts and Travel
The Fourth Amendment was forged from the flames of rebellion that led the colonial settlers in Rhode Island and other colonies to resist the arbitrary rule of royal tyranny. See 1 John Wesley Hall, Search andSeizure §§ 1.5, 1.6 (3d ed. 2000); James J. Tomkovicz, Technology and theThreshold of the Fourth Amendment: A Tale of Two Futures, 72 Miss. L.J. 317, 325 (2002). Since then, this limitation on government authority has become a revered landmark of our nation's laws and culture. Modern *Page 2 
society is mesmerized by media images captured by technological innovations not imagined when the framers put quill to parchment. Photographic and data storage technology has advanced to the point where it is within anyone's grasp — literally — to capture digital images with palm-sized cameras and cell phones, and quickly and quietly store them on personal computers for private viewing or public distribution.
The proliferation of these devices and the elusiveness of the images captured and stored on these devices pose unique challenges to privacy rights and law enforcement. Seven years ago, two commentators wrote, "[t]he future surely will bring more legal cases involving video voyeurism, as technology becomes smaller, more affordable, and easier to use." Clay Calvert Justin Brown, Video Voyeurism, Privacy, and theInternet: Exposing Peeping Toms in Cyberspace, 18 Cardozo Arts Ent. L.J. 469, 568 (2000). This case proves the accuracy of that prediction.[1] Nonetheless, the challenges presented by media technology neither permit nor require a departure from the bedrock principles enshrined in the Fourth Amendment. Notwithstanding the disturbing actions allegedly committed by the defendant, this case is a reminder that the Fourth Amendment stands its ground in the face of new technology and condemnable behavior.
This matter arises from events that occurred in September 2005. On September 18, 2005, the complaining witness ("child" or "complaining witness"), ten-years old at the time, and her mother ("mother") spoke and submitted written statements to Joel Camara ("Camara"), a detective employed by the Warren, Rhode Island Police Department, complaining of actions allegedly performed by the defendant. (See Child's Statement, Sept. 18, 2005; Mother's Statement, Sept. 18, 2005). It is alleged that Byrne *Page 3 
took photographs of the child's intimate areas while she was assisting Byrne at his place of business, the Off Center Coffee House ("coffee shop") in Warren. (See Child's Statement 1; Mother's Statement 1). In response, on September 20, 2005, Camara submitted two copies of the identical sworn affidavit to a judge of the District Court detailing these allegations. Camara's affidavit requested issuance of a warrant to search the coffee shop and Byrne's residence ("residence") located in Barrington, Rhode Island. (See Aff. 3). That same day the District Court simultaneously issued separate search warrants for the coffee shop and the residence.
On September 20, 2005 both search warrants were executed. Members of the Warren Police Department searched the coffee shop, while members of the Barrington Police Department searched the defendant's residence. (See Supplemental Narrative for Det. Joel N. Camara 2). The present motion concerns only the evidence seized upon execution of the warrant for the residence and does not concern the warrant issued for a search of the coffee shop or the fruits of that search. As a result of these searches, Byrne was charged with several criminal offenses: violation of the Electronic Imagining Devices Act, G.L. 1956 § 11-64-2, and two counts of violating the Uniform Controlled Substances Act, G.L. 1956 § 21-28-4.01.
The defendant contends that the evidence seized from his home should be suppressed because the search warrant used to obtain this evidence was improperly issued. The defendant claims that the search warrant that authorized a search of his residence was based on an affidavit that did not meet the nexus requirement linking the items sought with the particular location to be searched. Specifically, the defendant asserts that Camara's affidavit did not provide probable cause that incriminating items *Page 4 
would be found at the defendant's residence. As such, the defendant asks the Court to suppress all evidence seized from his residence.
The State objected, claiming that probable cause did exist to issue the warrant for Byrne's residence. The State first claims that the allegations in Camara's affidavit were sufficient to allow the issuing judge "to make reasonable inferences" regarding the likelihood that the defendant would have taken the alleged contraband from the coffee shop to his residence. (Mem. in Opp'n to Mot. to Dismiss 3, 5). Secondly, the State argues that the issuing magistrate's finding of probable cause is entitled to great deference. Lastly, in the event that the Court finds that the warrant lacked probable cause, the State urges the Court to recognize a good faith exception to the probable cause requirement.
 II Standard of Review
Rule 41(f) allows an aggrieved party to move the court to suppress evidence obtained pursuant to a warrant issued without probable cause. Super. R. Crim. P. 41(f). In determining whether probable cause exists to support a search warrant, courts take into account the totality of the circumstances presented to the issuing judge. See Illinois v.Gates, 462 U.S. 213, 238 (1983). A reviewing court must be cognizant that the issuing judge
 "applies the totality-of-the-circumstances test and makes a `practical commonsense' evaluation about whether all the facts and circumstances set forth in a particular affidavit, together with all reasonable inferences that can be drawn therefrom, establish `a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Page 5 State v. King, 693 A.2d 658, 661 (R.I. 1997) (quoting Gates, 462 U.S. at 238).
"[T]he trial justice should give great deference to the issuing magistrate's determination if it appears that he or she had a substantial basis from which to discern probable cause." State v.Correia, 707 A.2d 1245, 1249 (R.I. 1998) (citing Gates,462 U.S. at 236). Nonetheless, "when a defendant's constitutional rights are at issue, . . . [the Court] must make an independent examination of the facts, the findings, and the record in determining whether his or her rights have been violated." State v. Collodo, 661 A.2d 62, 64 (R.I. 1995).
 III Law and Analysis A Probable Cause
Almost sixty years ago, Justice Robert H. Jackson, writing for the United States Supreme Court, noted the constitutional limitations on search warrants that guide this court's determination: "[A] search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." United Statesv. Di Re, 332 U.S. 581, 595 (1948). Since then the requirements for a lawfully issued search warrant have remained rooted in constitutional principles.
In the matter currently before this Court, the defendant's contention that the warrant issued for his residence was not supported by facts found in Camara's affidavit harkens directly to the Fourth Amendment of the United States Constitution, Article I of the Rhode Island Constitution, and Rule 41(c) of the Superior Court's Rules of Criminal Procedure. The Fourth Amendment explicitly mandates that warrants be issued only *Page 6 
upon a showing of probable cause and after "particularly describing the place to be searched, and the . . . things to be seized." U.S. Const. amend. IV. Similarly, Article I of the state's Constitution provides, in pertinent part, that "no warrant shall issue, but . . . upon probable cause . . . and describing as nearly as may be, the place to be searched and the persons or things to be seized." R.I. Const., art. 1, sec. 6. Incorporating these cherished hallmarks of constitutional governance, Rule 41(c) requires that a search warrant shall be issued only if "supported by an affidavit . . . specifically designating the place to be searched . . .," among other requirements. Super. R. Crim. P. 41(c).
Echoing the federal and state constitutions and the Superior Court's rules, the Rhode Island Supreme Court explained, "probable cause must be found within the four corners of the . . . affidavit." State v.Joseph, 114 R.I. 596, 337 A.2d 523, 527 (1975). According to the court, an attack on the validity of a search warrant "hinges upon whether the affidavit's contents furnished the issuing magistrate with sufficient facts to permit a reasonable conclusion that the property which was the object of the search was actually on the premises to be searched at the time the warrant issued." State v. Tella, 113 R.I. 303, 321 A.2d 87, 89
(1974). The United States Supreme Court similarly requires a showing that "the specific `things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily,436 U.S. 547, 556 (1978). According to the court, a "search warrant . . . is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place. . . ."Steagald v. United States, 451 U.S. 204, 213 (1981).
This Court is mindful of the long history that leads directly from the colonial grievance against general warrants, known as writs of assistance, to the current state of *Page 7 Fourth Amendment jurisprudence and its counterpart in Rhode Island.See Tracey Maclin, The Complexity of the Fourth Amendment: A HistoricalReview, 77 B.U. L. Rev. 925, 940-43 (1997) (identifying the historical origins of today's specific warrants in the colonial repudiation of general warrants). Our own probable cause requirement "reflects [colonial] Rhode Island's revulsion towards those general warrants known as writs of assistance that agents of the British Crown used to harass our colonial forebears." State v. Jeremiah, 696 A.2d 1220, 1222 (R.I. 1997).
Time and again, courts have considered this nexus between the property searched for and the location to be searched. Courts that have found warrants supported by probable cause have been presented with more facts linking the property to be searched for, with the location to be searched, than is presently before this Court. In United States v.Zayas-Diaz, the United States Court of Appeals for the First Circuit considered the validity of a search warrant issued for the residence of a suspected drug dealer. The court ruled that the issuing judge had a substantial basis for finding that probable cause existed to issue a warrant because an affidavit provided by one informant identifying the defendant's residence and illegal activity was buttressed by an affidavit supplied by a second informant, both of which were corroborated by police surveillance of the defendant's residence.See 95 F.3d 105, 112 (1st Cir. 1996). Likewise, the case that the State urges the Court to turn to for guidance, United States v. Maneti, concerned a situation in which an informant provided details about the defendant's illegal activity, and the city and street name of the defendant's residence. See 781 F. Supp. 169, 172 (W.D.N.Y. 1991). The informant also stated that in a conversation between the informant and the defendant, the defendant indicated his intention to keep the contraband. *Page 8 
 Id. at 178. Though the affidavit upon which the warrant was issued did not allege that the contraband was seen at the defendant's residence, the residence was the only location identified by the informant who claimed to have sold the contraband to the defendant. See id.
On the other hand, search warrants issued upon affidavits that wholly failed to reference the location to be searched or failed to link the property to be seized with the location to be searched have later been found to lack probable cause. In a particularly relevant case, the United States Court of Appeals for the Fourth Circuit considered a challenge to the nexus requirement brought by a defendant whose residence was searched in accordance with a warrant in spite of the fact that neither the affiant nor the police informants stated that the contraband searched for was to be found at the defendant's residence.See United States v. Lalor, 996 F.2d 1578, 1579-80 (4th Cir. 1993). In fact, the affidavit did not provide facts alleging that the defendant's criminal actions occurred at or near his residence. See id. at 1582-83. Consequently, the court found the affidavit lacked probable cause to issue a warrant. See id. at 1583. Similarly, in United States v.Schultz, the United States Court of Appeals for the Sixth Circuit considered a situation in which an informant under arrest for drug related activity identified the defendant as his drug supplier.14 F.3d 1093, 1096 (6th Cir. 1994). Subsequent police investigations and observations of the defendant failed to yield evidence of any illegal activity by the defendant. See id. Importantly, the informant, the only person to have alleged that the defendant was involved in criminal activity, made no mention of safe deposit boxes for which a warrant was issued. See id. Consequently, the court found a "lack of evidentiary *Page 9 
nexus in this case, prior to the search, between the safe deposit boxes and any criminal activity." Id. at 1097.
This nexus between the property searched for and the location to be searched is critical with respect to the search warrant issued for Byrne's residence. This Court cannot consider the items seized from Byrne's residence, unsavory as they are, in determining whether probable cause existed. See Joseph, 337 A.2d at 527. Rather, the Court can and must turn only to the affidavit submitted by Camara. That affidavit provides great detail regarding the actions purportedly taken by the defendant at the coffee shop. However, the facts contained in the affidavit do not implicate Byrne's residence in any way. In fact, the affidavit is almost entirely devoid of any reference to Byrne's residence. The only mention of his residence comes in the last paragraph and only then to list the residence as one of two locations to be searched — the other location being the coffee shop where all the events discussed in the affidavit allegedly occurred.[2] The mere fact that the defendant, alleged to have committed criminal acts and alleged to be in possession of physical evidence of such acts, residessomewhere is not sufficient reason to justify a search of that residence. "In determining whether a search warrant is supported by probable cause, the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched."Lalor, 996 F.2d at 1582. *Page 10 
As the Rhode Island Supreme Court explained over thirty years ago, "any intrusion on this domain [a person's home] must be based on something more than suspicion." See Joseph, 337 A.2d at 527. Here, the State has failed to show that the warrant issued for Byrne's residence relied on more than suspicion. Instead, "[t]here is a lack of any factual data that would give rise to a probability of a transfer of the . . . [alleged contraband] from the . . . [place where the facts provided in the affidavit claimed the contraband was located] to the home." Id. Consequently, the warrant lacked the necessary probable cause. "To find otherwise would be to invite general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect — just the type of broad warrant the Fourth Amendment was designed to foreclose." Schultz, 14 F.3d at 1098.
 B Reasonable Inferences
The State contends that if probable cause cannot be found within the four corners of the affidavit, in the alternative the Court should find that the issuing "judicial officer may draw reasonable inferences from the affidavit in order to reach a determination of probable cause."See State v. Pratt, 641 A.2d 732, 736 (R.I. 1994). After careful review, the court finds Pratt and its progeny inapposite because those cases involved circumstances in which the fundamental nexus between the items to be seized and the location to be searched was satisfied, and the sufficiency of the warrant was challenged on other grounds. See State v.Verrechia, 880 A.2d 89, 97-98 (R.I. 2005) (finding that probable cause did exist to issue a search warrant where the supporting affidavit stated that members of a police surveillance team of which the affiant was a part saw the *Page 11 
defendant carrying what appeared to be the items to be searched for into the location to be searched); King, 693 A.2d at 661-62 (considering the reliability of various affidavits which clearly described the alleged contraband and provided details regarding its presence at the location to be searched); Pratt, 641 A.2d at 737 (determining that an affiant's personal knowledge that alleged contraband was stored at the location indicated in the search warrant, despite the affiant's "belief" that the defendant sold or gave away the contraband, nonetheless allowed the issuing judge to reasonably infer that the defendant still had the contraband described at the location identified in the warrant).
Moreover, the Court is not inclined to follow the novel reasoning presented by the State during oral arguments: "one man's speculation . . . is another man's reasonable inference." (Tr. 13). The application of our laws is not, and should not be, so fickle. See Alexander v."Americans United" Inc., 416 U.S. 752, 775 (1974) (Blackmun, J., dissenting). While speculation is nothing more than "theorizing about matters over which there is no certain knowledge," an inference is a well-defined term of art. Black's Law Dictionary 1435 (8th ed. 2004). Rule 301 of the Rhode Island Rules of Evidence defines an inference as "a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." R.I.R. Evid. 301(b). Here, there are no facts articulated in Camara's affidavit that support a reasonable inference that contraband or evidence of a crime would be found at the defendant's residence in Barrington. In the simplest of terms, it was not reasonable to infer that Byrne took the contraband discussed in Camara's affidavit to his residence without any underlying facts from which such an inference could "logically and reasonably be drawn." Therefore, the affiant's failure to allege any facts connecting the *Page 12 
property to be seized with the location to be searched is fatal.See Zurcher, 436 U.S. at 556.
 C Good Faith Exception
Failure to satisfy the requirements imposed by the federal and state constitutions and reinforced by the Superior Court's rules generally results in the exclusion of all evidence seized unlawfully. The Rhode Island Supreme Court recently described the exclusionary function of theFourth Amendment as "a prophylactic device designed to deter constitutional transgressions by law enforcement." State v. Casas,900 A.2d 1120, 1135 (R.I. 2006).
The State asks the Court to consider finding a good faith exception to the probable cause requirement as developed by the United States Supreme Court in United States v. Leon. 468 U.S. 897 (1984); see Mem. in Opp'n to Mot. to Dismiss 12. In that case, the court explained that theFourth Amendment's exclusionary rule has no deterrent effect "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." Leon, 468 U.S. at 920. As such, the court held that evidence seized pursuant to a search conducted in good faith, though without probable cause, is not usually subject to suppression under the Fourth Amendment.[3] See id. at 926. *Page 13 
In spite of the State's argument, Rhode Island has neither recognized nor rejected the exception declared by the Leon Court. On several occasions since Leon was issued, the Rhode Island Supreme Court has declined to adopt the good faith exception identified in that case. InState v. Nunez, the court clearly stated: "At this time we decline to consider whether we shall adopt the `good faith exception' rule propounded in United States v. Leon." State v. Nunez, 634 A.2d 1167,1171 (R.I. 1993). Only two years ago the court reiterated this position when it relegated to a footnote the prosecution's request for recognition of a good faith exception noting that it had no need to address the good faith issue. State v. Gomes, 881 A.2d 97, 105 n. 13 (R.I. 2005). In only one situation has the court undertaken a prolonged discussion of Leon's good faith exception. In State v. Taylor, the court addressed the trial justice's finding of a good faith exception.621 A.2d 1252, 1255-56 (R.I. 1993). However, that discussion was neither an endorsement nor a recognition of the good faith exception doctrine. Rather, the court limited its discussion to an explanation of the doctrine's inapplicability to the case before it. See id. at 1256.
Since our Supreme Court has repeatedly declined to endorse theLeon good faith exception, this Court elects to follow its direction. The State's argument that the officers conducted their search of Byrne's residence in good faith reliance on a warrant is unavailing.
 Conclusion
The Court finds that the search warrant issued for Byrne's residence lacked probable cause. Consequently, the search of Byrne's residence was unlawful, and the "fruits of the poisonous tree" are irreparably tainted. State v. Johnson, 414 A.2d 477, 478 *Page 14 
(R.I. 1980). The motion to suppress is granted. Because this issue is dispositive, the Court has no need to address the constitutional challenges to the Electronic Imagining Devices Act raised by the defendant. Counsel shall submit an appropriate order for entry.
[1] See also State v. Gribble, No. N2-2007-0037, October 19, 2007, Gale, J. (considering a prosecution under § 11-64-2).
[2] The final paragraph of Camara's affidavit is reproduced here in its entirety:
 "Therefore, I respectfully request that the court issue a warrant to search the Off Center Coffee House on 30 Child Street, Warren, Rhode Island, 02885 and Thomas P. Byrne's residence located at 93 Walnut Road[,] Barrington[,] Rhode Island, 02806 and seize any and all camera(s), computer(s), lap tops [sic], electronic and digital data storage devices such as zip drives, floppy disks, CD's, DVD's, ect. [sic] [a]s well as contraband or evidence of criminal activity." (Aff. 3).
[3] The Leon Court allowed for some exceptions to the good faith exception. Of particular relevance to Byrne's motion is the Court's explanation that "depending on the circumstances of the particular case, a warrant may be so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid."Leon, 468 U.S. at 923. Though this Court does not need to decide whether the warrant challenged by Byrne is so facially deficient as to preclude good faith reliance by officers, it does note that Byrne's challenge is precisely of the type identified here by the Leon Court. That is, Byrne claims that the warrant failed to provide particularized information regarding the place to be searched.